**Alcee L. HASTINGS, Honorable U.S. District Judge, U.S. District Court for the Southern District of Florida, Appellant,**

v.

**JUDICIAL CONFERENCE OF the U.S., et al.**

No. 86–5588.

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1987.

Decided Sept. 15, 1987.

Terence J. Anderson, Coral Gables, Fla., with whom John W. Karr, William G. McLain, Washington, D.C., and Robert S. Catz, Coral Gables, Fla., were on brief, for appellant.

Brook Hedge, Atty., U.S. Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Harold Krent, Atty., U.S. Dept. of Justice, Washington, D.C., were on brief, for appellees Judicial Conference of the U.S., et al.

John Doar, New York City, for appellees Judicial Council of the Eleventh Circuit, et al.

Before RUTH BADER GINSBURG, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

D.H. GINSBURG, Circuit Judge:

Two years ago, this court held that United States District Judge Alcee L. Hastings' challenges to the constitutionality of the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 ("the Act"),[1] were premature, and instructed the lower court to dismiss the action without prejudice. When that action was filed, the committee appointed by the Chief Judge of the Eleventh Circuit to investigate the complaint lodged against Judge Hastings under the Act ("the Investigating Committee") had not yet reported its conclusions and recommendations to the Judicial Council of the Eleventh Circuit ("the Council"); we held that the possible outcomes of the investigation were too numerous, and the actual outcome too uncertain, to justify judicial intervention at that stage in the proceedings.[2]

Since that time, the Investigating Committee has delivered its findings and recommendations to the Council, prompting Judge Hastings to renew his attack on the constitutionality of the Act. In addition, during the pendency of this appeal, the Council determined that Judge Hastings may have committed impeachable offenses and, as contemplated by the Act in such circumstances, it certified this finding to the Judicial Conference of the United States ("the Conference"). The Conference has concurred in the Council's assessment that the consideration of impeachment may be warranted and in turn certified this determination to the House of Representatives.

Judge Hastings filed the instant action for injunctive relief on August 25, 1986, a few weeks after the Investigating Committee transmitted its report and recommendations to the Judicial Council.[3] His complaint contained two counts. Count One alleged that the Act, on its face, violates the separation-of-powers principles of the Constitution and the Due Process Clause of the Fifth Amendment; Count Two alleged that the Council's (and the Conference's expected) application of the Act to Judge Hastings violated the same constitutional principles and worked a violation of the Compensation Clause of Article III of the Constitution.

In a brief unpublished opinion, the district court held that Judge Hastings' claims concerning procedures before the Conference were not then ripe, and that all but one of his additional constitutional claims were barred by final rulings in one or more cases in which Judge Hastings participated and had an opportunity to raise the claims.[4]

---

1. 28 U.S.C. §§ 331, 332, 372(c), 604 (1982).

2. *Hastings v. Judicial Conference of United States,* 770 F.2d 1093 (D.C.Cir.1985) (*"Hastings I"*).

3. The defendants named in the action were the Judicial Conference of the United States; the Chief Justice of the United States; the Judicial Conference's Committee to Review Circuit Council Conduct and Disability Orders; the Judicial Council of the Eleventh Circuit; John C. Godbold, Chief Judge, and Gerald Bard Tjoflat and Frank M. Johnson, Jr., United States Circuit Judges, United States Court of Appeals for the Eleventh Circuit; Sam C. Pointer, Jr., Chief Judge, United States District Court for the Northern District of Alabama; and William C. O'Kelley, United States District Judge, United States District Court for the Northern District of Georgia.

4. *See Hastings v. Judicial Conference,* 657 F.Supp. 672, 674 (D.D.C.1986), *citing* (1) *Williams v. Mercer,* 610 F.Supp. 169 (S.D.Fla. 1985), *aff'd in part and rev'd in part on other grounds, In the Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit,* 783 F.2d 1488 (11th Cir.1986) (*"Hastings II"*), *cert. denied sub nom. Hastings v. Godbold,* —— U.S. ——, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986); (2) *Hastings v. Judicial Conference of the United States,* 593 F.Supp. 1371 (D.D.C.1984), *aff'd in part and vacated in part,* 770 F.2d 1093 (D.C.Cir.1985) (*"Hastings I"*); *cert. denied,* —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986); (3) *In re Petition to Inspect and Copy Grand Jury Materials,* 576 F.Supp. 1275 (S.D.Fla.1983), *aff'd* 735 F.2d 1261 (11th Cir.1984), *cert. denied sub nom. Hastings v. Investigating Committee for the*

The single constitutional claim that the court held properly presented for decision was the contention that Congress may not compel the Conference to certify to the House of Representatives its own or a council's determination with respect to a judge that—in the words of the Act—"consideration of impeachment may be warranted." [5] The district court found this claim to be without merit, however, because "[a]ny certification of the Council or the Conference is merely informational, nothing more, to be granted only such weight as Congress in its wisdom wishes." [6]

In this appeal, Judge Hastings renews his challenge to the constitutionality of the Act on its face and as applied, and disputes whether any issues he presents are or should be precluded by prior judicial decisions. First, the appellant asserts that the scheme established by the Act is "unconstitutional in principle" [7] because it improperly assigns executive and legislative functions to certain Article III judges and, in the course thereof, compromises the independence of all Article III judges. It is by no means clear whether the appellant intends for this general indictment of the Act to be treated as a distinct claim on appeal, or only as background to his more specific claims; we give him the benefit of the doubt, however, and treat the argument as raising a separate claim. Second, he maintains that the Act's certification requirements [8] violate separation-of-powers principles and compromise judicial independence. Third, the appellant argues that the Chief Judge of the Eleventh Circuit has effectively diminished Judge Hastings' compensation in office, in contravention of Article III, by exercising his discretion to initiate an investigation, thus requiring appellant to bear the cost of defending himself.

Fourth, Judge Hastings makes certain facial attacks on the Act based on the Due Process Clause. Specifically, he alleges that the Act fails to provide fair procedures, and that it is unconstitutionally vague and overbroad. Finally, the appellant argues that the Act has been applied to him in an unconstitutional manner, again in violation of separation-of-powers principles, the Compensation Clause, and the Due Process Clause.

For the reasons stated below, we hold that the appellant was properly estopped from raising his claims that the investigatory and subpoena powers of the Investigating Committee and the Council violate the separation of powers and derogate from judicial independence. In view of recent developments, we do not agree with the district court that the issues sought to be raised as to procedures before the Conference are unripe. In addition, we disagree with the district court's conclusion that the remaining issues are precluded.

With respect to appellant's challenge to the certification provisions of the Act, we affirm the district court because we interpret the duty placed on the Conference to be discretionary rather than mandatory, thus blunting any concern with its effect on the separation of powers. The Compensation Clause claim was not decided in previous litigation, but is not properly before us because the appellant did not exhaust his administrative remedies.[9] The facial challenge to the Act on due process grounds is not precluded, but lacks merit. Finally, the claims alleging a denial of due process in the investigation as it unfolded must be revisited by the district court in order to consider whether the objections were raised during the investigative pro-

---

*Judicial Council of the Eleventh Circuit,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984).

5. 28 U.S.C. § 372(c)(8).

6. *Hastings v. Judicial Conference,* 657 F.Supp. 672, 675 (D.D.C.1986); Appellant's Appendix at 182.

7. Brief for Appellant at 21.

8. 28 U.S.C. §§ 372(c)(7)(B) and (c)(8).

9. The district court failed to address the Compensation Clause issue, perhaps because the appellant raised the claim in his complaint only obliquely, and did not address it at all in his motion for a temporary restraining order, his motion for a preliminary injunction, or at oral argument before the district court. We overlook these omissions, however, only to note the bar of non-exhaustion.

ceedings and exhausted, and if so to resolve them on the merits.

## I. BACKGROUND [10]

### A. *Developments Through Hastings I*

Appellant was indicted on December 29, 1981, by a federal grand jury for conspiracy to solicit and accept money in return for performing certain official actions in his capacity as a federal judge. The indictment also alleged that Judge Hastings revealed to his co-conspirator, William Borders, the content and expected issuance date of a judicial order that he was preparing. According to the indictment, Borders relayed this information to an undercover agent posing as a defendant in a case pending before Judge Hastings.

Judge Hastings moved to quash the indictment on the ground that impeachment by Congress is the sole means of punishing a federal judge for high crimes and misdemeanors. The motion was denied. Meanwhile, the trial of the alleged co-conspirator, Borders, was severed, he was convicted of several counts of conspiracy, and his conviction was upheld on appeal.[11] On February 4, 1983, however, Judge Hastings was acquitted of all the charges brought against him.

On March 17, 1983, two district court judges filed a complaint with the Judicial Council of the Eleventh Circuit against Judge Hastings, pursuant to 28 U.S.C.

§ 372(c), alleging that he had engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts and had violated several canons of the Code of Judicial Conduct for United States Judges. Specifically, the complaint charged in substance that Judge Hastings had actually committed the crime of which he had recently been acquitted; that is, it alleged that he had conspired to obtain a bribe in return for the performance of a judicial act. The complaint also contained other allegations concerning conduct and statements by Judge Hastings in the course of the criminal proceedings against him.[12] On March 29, 1983, Chief Judge John C. Godbold of the Eleventh Circuit appointed a committee to investigate the complaint, pursuant to 28 U.S.C. § 372(c)(4). The Investigating Committee consisted of himself, two circuit judges, and two district judges. On June 3, 1983, the Investigating Committee filed a petition in the Southern District of Florida for access to the files of the grand jury that had indicted Judge Hastings. The court granted the petition over Judge Hastings' objection that the investigation was part of a conspiracy to deprive him of his constitutional rights. That decision was affirmed by the Eleventh Circuit, which held that the Act barred district court review of Judge Hastings' conspiracy claims,[13] and remitted him exclusively to review by the Judicial Conference, under the procedures of the

---

**10.** The structure and operation of the Act, as set forth concisely in our opinion in *Hastings I,* 770 F.2d at 1095–96, is reprinted for the convenience of the reader as an appendix to this opinion.

**11.** *United States v. Borders,* 693 F.2d 1318 (11th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983).

**12.** In addition to the bribery allegation, the complaining judges charged that, in violation of the Code of Judicial Conduct:

(2) Judge Hastings made "public and unfounded statements" that the United States was prosecuting him on racial/political grounds; (3) Judge Hastings knowingly and publicly exploited his judicial position or acquiesced in such exploitation by others acting on his behalf by accepting financial donations from lawyers and other members of the pub-

lic to defray the costs of his criminal defense; (4) Judge Hastings, by his own testimony, had allowed *ex parte* contacts between his law clerk and counsel in pending cases concerning substantive issues in those cases and concerning the content of orders and opinions not yet entered, and had "completely abdicated and delegated" his judicial decision-making authority to his law clerk; (5) Judge Hastings, by his own testimony had told counsel in a judicial proceeding that he had read an important precedent when he knew he had not and explained his deception by implying that it was common for judges to make such deliberate misstatements; (6) Judge Hastings, by his own testimony, had exploited his judicial position by soliciting funds for someone he knew was a convicted federal offender.

*Hastings I,* 593 F.Supp. 1371, 1376–77 (D.D.C. 1984).

**13.** 28 U.S.C. § 372(c)(10).

Act, "in a challenge to the actions, if any, taken by the Judicial Council." [14]

Judge Hastings brought an action in the United States District Court for the District of Columbia (*Hastings I*), approximately six months after the Investigating Committee began its work, to enjoin the Eleventh Circuit proceedings against him and to declare the Act unconstitutional. The complaint alleged that the Act, both on its face and as applied, violated the separation-of-powers principles of the Constitution and the Due Process Clause of the Fifth Amendment. The complaint also alleged that several Eleventh Circuit judges conspired to violate the Judge's constitutional rights, and that his rights under the Privacy Act had been violated.

The district court dismissed the action [15] and we affirmed its order, but for reasons different than those offered by the district court.[16] We held that, at the time the district court rendered its decision, adjudication of the constitutional challenges to the Act, both on its face and as applied, was premature. We also held that the appellant had had a full and fair opportunity to litigate the conspiracy claim in *Petition to Inspect*,[17] and that, accordingly, the Eleventh Circuit's holding that such matters were committed to the exclusive review of the Judicial Conference was binding on the appellant "for all future litigation between himself and the [investigative] committee over matters related to this investigation." [18] We expressly declined, however, to adopt the Eleventh Circuit's view of the reviewability of Judge Hastings' conspiracy claims as our own, or to "express [any] view ourselves on that issue." [19] Finally, we found that the "disclosures by Justice Department officials to the Investigative Committee concerning the criminal proceedings against Judge Has-

tings were proper as a 'routine use' under the Privacy Act...." [20]

## B. Developments Since Hastings I

Since his previous appeal was before us, the procedure prescribed by 28 U.S.C. § 372(c) has been completed. The inquiry into Judge Hastings' conduct has progressed from the Investigating Committee to the Council and on to the Conference, which determined that the appellant has engaged in conduct that may warrant impeachment, and so certified to the House of Representatives. In addition, the Eleventh Circuit has decided another lawsuit stemming from the investigation of Judge Hastings (*Hastings II*).[21] That case involved an attempt by Judge Hastings and his former and present office staff to enjoin the enforcement of subpoenas issued by the Investigating Committee, and, consolidated with the Judge's appeal, original proceedings brought by the Committee to enforce the subpoenas. These recent factual and legal developments are crucial to the disposition of this appeal.

### 1. Certification to the House

On August 4, 1986, just days before we issued our decision in *Hastings I*, the Council notified Judge Hastings that it had received the report of the Investigating Committee.[22] The Committee recommended that the Council certify to the Conference that consideration of impeachment may be warranted. On September 2, 1986, the Council filed its report with the Conference, pursuant to 28 U.S.C. § 372(c)(7)(B). The Council concluded from its investigation that Judge Hastings

has engaged in conduct which might constitute one or more grounds for impeachment under Article I of the Constitution, in that: (a) in an effort to avoid conviction on the charge of conspiracy to solicit

---

14. *Petition To Inspect,* 735 F.2d 1261, 1275.

15. *Hastings I,* 593 F.Supp. 1371.

16. 770 F.2d 1093 (1985).

17. 735 F.2d at 1275 & n. 10.

18. 770 F.2d at 1103.

19. *Id.*

20. *Id.* at 1104.

21. 783 F.2d 1488 (11th Cir.1986).

22. Shortly thereafter, the appellant filed this lawsuit.

and accept a bribe in exchange for a judicial act Judge Hastings engaged in obstruction of justice ...; and (b) Judge Hastings did in fact engage in such conspiracy.[23]

The Council's determination was sent to the members of the Conference on September 4, 1986, together with the report of the Investigating Committee and related materials. On March 17, 1987, the Conference certified to the House of Representatives its concurrence in the Council's determination that consideration of Judge Hastings' impeachment may be warranted.[24]

### 2. *Hastings II*

In May 1985, while the appeal in *Hastings I* was *sub judice* in this court, the Investigating Committee directed that subpoenas be issued and served on Judge Hastings' secretary, Betty Ann Williams, and on three of the judge's then-present or former law clerks. The subpoenas directed each to appear before the Committee on a specified date and directed Ms. Williams to produce appointment diaries and the like from Judge Hastings' chambers. The subpoenaed parties either failed to appear before the Committee on the appointed date, or appeared and refused to testify about communications between Hastings and his staff on grounds of privilege. In response, the Committee filed separate motions with the Eleventh Circuit for enforcement of the subpoenas and for orders directing the staff members to testify as to all pertinent matters.

On May 20, 1985, Ms. Williams and Mr. Erlich, one of the subpoenaed law clerks, brought an action in the United States District Court for the Southern District of Florida against the Investigating Committee and the clerk of the Court of Appeals for the Eleventh Circuit. The plaintiffs sought to quash the subpoenas principally by demonstrating that the subpoena power conferred on the Committee by the Act was invalid. The district court dismissed the complaint for lack of subject matter jurisdiction on the ground that the court of appeals, which issued the subpoena, is the appropriate forum in which to challenge subpoenas issued under the Act.[25] The court also held, in the alternative, that the complaint was without merit and that the subpoenas were lawful. Plaintiffs appealed.

Although Judge Hastings was a party to the appeal from the district court, he expressly declined to press the constitutional claims raised below. A special panel of the the Eleventh Circuit, which consisted of three circuit judges from other circuits, affirmed the district court's dismissal on the jurisdictional grounds stated,[26] and went on to consider the original enforcement action brought by the Committee. Judge Hastings was not a party to the subpoena enforcement proceeding; his motion to intervene in that proceeding was denied by the Court of Appeals as untimely filed.[27] Nevertheless, the court found that the subpoenaed witnesses had standing to raise certain constitutional objections to those portions of the Act relating to the validity of the on-going investigation of Judge Hastings.

The Eleventh Circuit summarizes the constitutional claims raised in *Hastings II* as follows:

"(1) The Act impermissibly assigns executive powers, including the subpoena power, to judicial officers.

(2) The investigatory scheme established by the Act unconstitutionally intrudes upon the independence of sitting Article III judges to engage in free and uninhibited decisionmaking.

(3) The authority given to the judicial branch to certify that grounds for im-

---

**23.** Certification of the Judicial Council of the Eleventh Circuit In the Matter of Certain Complaints Against United States District Judge Alcee L. Hastings.

**24.** Defendant-Appellees' Appendix at 142.

**25.** *Williams v. Mercer,* 610 F.Supp. 169 (S.D.Fla. 1985).

**26.** *Hastings II,* 783 F.2d 1488, 1494–99.

**27.** The same counsel that represented Judge Hastings in his appeal, however, also represented two members of Judge Hastings' staff who were parties to the enforcement action. *Id.* at 1500.

peachment may exist is inconsistent with the sole power of the House of Representatives to initiate impeachment proceedings.

(4) The Act's standards of judicial misconduct are unconstitutionally vague and overbroad.

(5) The Act violates the due process rights of judges under investigation in that it denies the accused judge the right to confront the evidence against him and impermissibly combines investigatory/prosecutorial and adjudicatory functions in the judicial council." [28]

The court rejected the first, second, and third claims on their merits. It held that the appellant staff members were without standing to raise the fourth claim, and that it was unnecessary to reach the fifth claim in order to decide the validity of the Committee's investigatory and subpoena powers. Certain other constitutional and technical objections to the subpoena were raised by the appellants, including the claim of a privilege protecting communications among Judge Hastings and members of his staff, but the subpoenas were held enforceable notwithstanding these.[29]

## II. DISCUSSION

### A. *Issue Preclusion*

Judge Hastings argues that neither the Eleventh Circuit's decision in *Hastings II,* nor any other prior case, prevents this court from making an independent decision on the merits of each constitutional claim he raises in this appeal.

At the outset we note the general rule of issue preclusion: "[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." [30] To the extent that any constitutional issues are precluded in this case, the bar is *Hastings II.* Insofar as relevant here, *Petition to Inspect* involved only the Investigating Committee's access to grand jury materials and the proper forum for presentation of appellant's conspiracy theory, and *Hastings I* held only that questions concerning the Act's constitutionality were not then ripe for review.

As noted earlier, the district court in the instant case reached the merits only with respect to Judge Hastings' claim that the certification provisions of the Act are unconstitutional. The court held, somewhat cryptically, that all of his other claims were barred by rulings in "one or more" of the cases in which the appellant participated and which the court cited. The court neither identified the precluded claims nor attempted to match each claim to be barred by collateral estoppel with the case in which the issues necessary for its resolution had been decided adversely to the appellant.

■ As the appellees apparently concede, albeit grudgingly,[31] the preclusive effect of prior decisions is far narrower than the district court suggested. Indeed, the only claims precluded are those that challenge the constitutionality of conferring investigatory power on Article III judges.[32] In *Hastings II,* the Eleventh Circuit upheld the constitutionality of the investigatory and subpoena powers of the Investigating Committee and of the Council, over Judge Hastings' objection that these powers are

---

**28.** *Id.* at 1502.

**29.** *Id.* at 1514–25.

**30.** Restatement (Second) of Judgments § 27 (1982) cited with approval in *National Treasury Employees Union v. Internal Revenue Service,* 765 F.2d 1174, 1176 (D.C.Cir.1985) (emphasis omitted); *see Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

**31.** Brief for Judicial Conference at 23–24.

**32.** Judge Hastings makes the related separation-of-powers claim here that the mechanism prescribed by the Act makes "legislative commissioners" of judges, since their investigations of complaints are conducted with an eye toward certifying to the House of Representatives whether a judge's conduct may warrant consideration of impeachment. This claim has not been previously decided in litigation in which Judge Hastings was a participant; nevertheless, we find the claim meritless for the reasons given in our discussion of the certification issue.

executive and, therefore, cannot be vested in the Judicial Branch of government consistent with separation-of-powers principles.[33] In addition, *Hastings II* rejected the appellant's claims that the judicial complaint procedure unconstitutionally intrudes upon the independence of the judge under investigation.[34] Thus, what we have styled as Judge Hastings' first claim on appeal,[35] is precluded by the Eleventh Circuit's decision in *Hastings II.*[36]

Although *Hastings II* also rejected the claim that the certification provisions of the Act intrude upon the executive power of the House to initiate impeachment proceedings,[37] the district court was correct in reaching the merits of the certification issue. For, passing whether the Eleventh Circuit's conclusions were correct, it was by no means essential for that court to decide this constitutional issue in order to determine whether the subpoenas were valid. Nor are appellant's Compensation Clause claim or the facial due process challenges precluded by *Hastings II*; the former was not presented and the court declined to reach the latter because even "[i]f

**33.** 783 F.2d at 1503–06.

**34.** *Id.* at 1506–10.

**35.** *See supra* at 94.

**36.** While the Eleventh Circuit in *Hastings II* addressed itself in terms primarily to the lawfulness of the Investigating Committee's authority, neither its reasoning nor its conclusion left open the possibility of now separately attacking the investigative authority vested in the Council. The court found it necessary to consider the role of the Council in reaching the conclusion that the Act does not impermissibly assign executive powers to the judges serving on the Investigating Committee. The court observed:

"After the investigation is complete, the judicial council

shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit, including, but not limited to, any of the following actions.... 28 U.S.C. § 372(c)(6)(B).

Thus, unlike the President's Commission on Organized Crime, which recommended law enforcement legislation and also various executive measures to the President and Attorney General, the investigating judges here are concerned solely with matters affecting the management and reputation of the judiciary itself.

We know of no authority for the proposition that court's administrative and investigatory activities, limited to consideration of their own conduct and efficiency, are to be labelled as 'executive' simply because non-adjudicative in character."

783 F.2d at 1504 (footnote omitted). Later, the court stated:

"The critical point is that the investigatory tasks at issue here, including the subpoena power, have the sole purpose of exploring complaints against federal judges and magistrates, with the ultimate aim of promoting 'the effective and expeditious administration of the business of the courts.' Functions so limited in scope and purpose may or may not be constitutional in other respects, but they do not fall outside the ambit of duties assignable to members of the judicial rather than of another branch."

*Id.* at 1505. Reflecting back on these passages, the court later remarked that "we have determined that a judicial council may constitutionally conduct an investigation...." *Id.* at 1510.

As to the argument concerning judicial independence, the Eleventh Circuit stated:

"The Act also expressly allows a judicial council, upon determining that a judge has engaged in conduct constituting one or more grounds for impeachment, to certify this determination to the Judicial Conference for eventual presentation to the House of Representatives.... [W]e uphold the constitutionality of this authority, and find that it does not 'chill' a judge's independence any more than does existence of the impeachment power itself. Like the other sanctions we have discussed, this power, also, does not, in our view, impinge upon the protected independence of judges."

*Id.* at 1509. Although we have elsewhere noted that the Eleventh Circuit's consideration of the constitutionality of the Conference's possible certification to the House that impeachment may be warranted was not essential to its holding, the same may not be said of that court's consideration of the Council's power of certification to the Conference. We do not regard the Eleventh Circuit's conclusions regarding certification by the Conference as necessary because such certification involved several layers of speculation. *Id.* at 1512; *see also id.* at 1510 n. 20. It was entirely reasonable, however, for the Eleventh Circuit to feel bound to consider the immediate uses to which the subpoenaed information might be put in deciding whether the subpoena power was lawful. *Id.* at 1510–11.

Of course, because the issue is precluded, we express no judgment on whether the authority that the Act vests in the judicial councils violates separation-of-powers principles or unconstitutionally treads upon the independence of Article III judges.

**37.** 783 F.2d at 1510–12.

Judge Hastings' procedural rights are being denied, that does not impair the enforceability of the Committee's subpoenas."[38] Similarly, the due process challenges to the investigation as it unfolded could not be barred, since the complaint against the appellant was still being considered by the Investigating Committee when *Hastings II* was decided.

The appellant does not really deny that his broad claims relating to the constitutionality of the investigatory process prescribed by the Act were decided in *Hastings II;* instead, he offers a number of reasons why he should not be precluded from re-presenting them in this litigation. First, appellant states that "[t]he legal context in which [he] asserts his claims here differs substantially from the context that prevailed when the special panel [in *Hastings II*] considered claims that were significantly unrelated," and that preclusion would result in an "inequitable administration of laws."[39] Judge Hastings adduces no further support for this vague and conclusory claim, and we find it entirely unpersuasive.

Second, the appellant argues that a determination of the validity of the Act as a whole in a single action is warranted, because a fragmented analysis obscures the fact that the whole of the Act is, in essence, more unconstitutional than the sum of its parts. Although initially intriguing, this argument is ultimately unconvincing. What appellant calls "fragmentary analysis" of legislation is in fact the norm in our judicial system; courts are empowered to rule on the constitutionality of only those portions of a statute that are ripe for review. Once a court has done so, the same issues may not be relitigated by the same parties. While an exception might be made where the proponent can plausibly show what appellant here claims about the peril of fragmented review, he simply has not

made that showing. Try as we have, we see here no more than an unsuccessful litigant understandably seeking a second chance. We understand but we cannot accommodate.

Finally, the appellant claims that he was denied an adequate opportunity to obtain full and fair adjudication in *Hastings II* because: (1) it was improper for the Chief Justice, who is also chairman of the Conference, to select judges to sit on the special panel designated to decide *Hastings II*, inasmuch as he was an appellant in that action; and (2) the appellant was not a party to the original subpoena enforcement action. We reject the first assertion, since the appellant has produced no evidence whatsoever suggesting that the special panel, its method of selection, or its decision was, might have been, or even gave the appearance of being, anything less than fair and impartial. The purely theoretical possibility of bias in the selection does not render the application of the special panel's decision "unfair" to the appellant.

We also find that Judge Hastings cannot avoid the preclusive effect of *Hastings II* by pointing to his non-party status as to the subpoena enforcement action, since his role in that action was significant. A non-party who "controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."[40] There is ample evidence that Judge Hastings exercised substantial control over the defense of the subpoena enforcement action. First, although his motion to intervene was denied as untimely, his attorney, who prepared that motion, represented two members of Judge Hastings' staff in the enforcement action. Second, Judge Hastings assumed the role of lead petitioner in the petition for certiorari to review *Hastings II*. Finally, the special panel in *Hastings II* held that the subpoe-

---

**38.** *Id.* at 1514.

**39.** Brief for Appellant at 26, *citing* Restatement (Second) of Judgments § 28(2) (1982).

**40.** Restatement (Second) of Judgments § 39 (1982). *See Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 262 n. 4, 81 S.Ct. 557, 559 n. 4, 5 L.Ed.2d 546 (1961); *Souffront v. Compagnie des Sucreries,* 217 U.S. 475, 486–87, 30 S.Ct. 608, 612–13, 54 L.Ed. 846 (1910).

naed witnesses "arguably possess a kind of surrogate standing [to raise certain constitutional challenges to the Act], derived from Judge Hastings' judicial privilege upon which their enforced testimony may impinge." [41] In allowing them to raise those issues the court further noted that the appellant "undoubtedly supports these witnesses' refusal to testify; he may well have requested them to take that position on his behalf." [42] With such a strong interest in the outcome, his intimate and supervisory relationship to the parties who were on his staff, and the role of his own lawyer in the litigation, it is apparent that the appellant was less than a party to the enforcement action in name only.

### B. *Certification*

If, after receiving an investigating committee's report, a judicial council determines that a judge has "engaged in conduct which might constitute ... grounds for impeachment under article I of the Constitution," the council "shall promptly certify such determination, together with any complaint and a record of any associated proceedings, to the Judicial Conference of the United States." [43] If, after receiving such certification, the Conference "concurs in the determination of the council, or makes its own determination, that consideration of impeachment may be warranted, it shall so certify and transmit the determination and the record of proceedings to the House of Representatives for whatever action the House of Representatives considers to be necessary." [44]

Judge Hastings contends that, at least when the Council has made the determination specified in section 372(c)(7)(B), the Conference is not merely authorized—but is required—by section 372(c)(8) to determine whether a judge has engaged in conduct that may warrant consideration of impeachment by the Congress, and if so, to certify that determination to Congress. We agree that weighty constitutional issues would arise if certification by the Conference to the House were mandatory, because such a scheme would (1) require Article III judges to make a determination that is arguably an exercise of judicial power yet subject to review by another branch of government,[45] or (2) force members of the Judicial Branch to make initial determinations concerning the impeachability of judges, arguably in violation of the Constitution's exclusive assignment of the impeachment power to the Legislative Branch.[46]

■ In our view, however, the better reading of the Act is that both determination and therefore certification by both the councils and the Conference, is entirely discretionary. Congress simply provided statutory authority for the inherent right of the Conference, if it so chooses, to advise the House that, in the course of carrying out the Act's primary mission of regulating judicial conduct *short* of impeachable offenses, that a judge may have crossed that line. We reach this conclusion not merely to avoid a reading that might place the

41. 783 F.2d at 1501.

42. *Id.*

43. 28 U.S.C. § 372(c)(7)(B).

44. *Id.* (c)(8).

45. *Cf. Hayburn's Case*, 2 U.S. (Dal.) 409, 1 L.Ed. 436 (1792); *United States v. Ferreira*, 54 U.S. (13 How.) 40, 14 L.Ed. 42 (1851).

46. The district court was apparently willing to accept the appellant's characterization of certification as mandatory, but believed that any separation-of-powers problems were solved by the non-binding character of the certification with respect to the Conference: "Because any certifi-

cation under the Act has only informational effect, no further constitutional issue is raised by the mandatory nature of the requirement that the Conference certify to the House of Representatives its determination that impeachment may be warranted." *Hastings v. Judicial Conference*, 657 F.Supp. 672, 675. The district court's statement, however, does not render the certification provision free from constitutional doubt, for the reason given in the text above. Moreover, so far as we can determine, the appellant has not attempted to portray certification by the Conference as binding on the House; indeed, any such assertion would be puzzling in view of the provision in 28 U.S.C. § 372(c)(8) making it clear that the House may take "whatever action [it] considers to be necessary" in response to certification.

constitutionality of the Act in doubt,[47] but because a fair reading of the Act supports this interpretation. Neither the councils nor the Conference is *required* by the terms of the Act to determine whether a judge may have committed an impeachable offense. No one could maintain otherwise.

As to the councils, 28 U.S.C. § 372(c)(7)(B) is implicitly conditional:

*In any case in which the judicial council determines,* on the basis of a complaint and an investigation under this subsection, or on the basis of information otherwise available to the council, that a judge appointed to hold office during good behavior has engaged in conduct—(i) which might constitute one or more grounds for impeachment under article I of the Constitution; ... *the judicial council shall promptly certify such determination,* together with any complaint and a record of any associated proceedings, to the Judicial Conference of the United States. (Emphasis added).

Nowhere does the Act require a council even to consider whether the judicial misconduct before it may constitute an impeachable offense. A council may simply conduct an investigation, decide whether to take any of the disciplinary actions listed in 28 U.S.C. § 372(c)(6)(B), and go no further. Only when a council does elect—in its discretion—to consider the impeachment question, and determines that impeachment may be warranted, must it certify that determination to the Conference. The determination is discretionary but once made, the communication is mandatory. Because that communication is wholly within the judicial branch, however, it does not even suggest any separation-of-powers problem.

The Conference is also free of any statutory compulsion ever to confront the impeachment issue. The language of 28 U.S.C. § 372(c)(8) is explicitly conditional:

*If* the Judicial Conference concurs in the determination of the council, or makes its own determination, that consideration of impeachment may be warranted, it shall so certify and transmit the determination and the record of proceedings to the House of Representatives ... (Emphasis added).

Regardless of what determination, if any, a council has made, the Conference always has the option to refrain from making any determination or from concurring in a council's determination of whether a judge's misconduct may warrant impeachment; instead, the Conference may choose simply to consider which of the actions described in 28 U.S.C. § 372(c)(6)(B), if any, is appropriate.

In sum, the Act's certification provisions require neither the Conference nor the council to make any certification concerning impeachment; and, even if the Conference exercises its discretion to make a determination that impeachment may be warranted, the requirement that it certify that determination to the House is without independent constitutional significance. Indeed, it should be self-evident that such a scheme is free from constitutional doubt. There is no harm in requiring that any opinion the Conference holds be made public, so long as it does not have to formulate any opinion at all if it does not choose to do so.

It is to be expected, of course, that Congress would accord the Conference's recommendation the substantial respect it would be due.[48] Congress might equally,

---

**47.** *See NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979); *United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 U.S. 366, 407–08, 29 S.Ct. 527, 535–36, 53 L.Ed. 836 (1909).

**48.** Judge Hastings also presses anew the argument that certification by the Conference "might substantially alter the political context in which impeachment recommendations are brought before the House from that intended by the Framers—making it more difficult for the

House to decline to impeach in the face of an express recommendation." 783 F.2d at 1512. This argument is unpersuasive, however, in the absence of any indication that, in passing the Act, Congress was attempting to bind itself, or even thought it risked binding itself, by creating a forceful political dynamic. Without such evidence, we are unwilling to indulge our own predictions about the effect of a certification on the politics and priorities of the House. *Cf. Bowsher v. Synar,* — U.S. —, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583 (1986).

however, regard a private informant's suggestion that a judge may have committed an impeachable offense as a matter of the utmost gravity. That would undoubtedly depend upon the informant's reputation for probity and the quality of the information to which he had access. Any difference in the effect on Congress that a recommendation coming from the Conference and one made by a private citizen might have is without constitutional significance, however, for it is beyond doubt that the Conference, like any other individual or group, may inform the Congress when it concludes that a judge may have breached his public trust. Insofar as the Conference reveals that it is concurring in the council's determination, of course, it may place a cloud over the relationship between the Council and the judge the Council has accused, to the detriment of public confidence in his decisions. But that is a reason counseling caution in any Council or Conference decision to take up the question, not a constitutional barrier to their sharing their answer with Congress and the public.

## C.  *Compensation Clause*

The appellant claims that his compensation in office was diminished in violation of Article III, Section 1 of the Constitution because (1) the Act includes no provision for payment or reimbursement of the costs associated with a judge's defending himself against complaints investigated thereunder; and (2) the Director of the Administrative Office of United States Courts ("the Director"), declining Judge Hastings' request for reimbursement, stated that he has no authority to pay such expenses based solely upon the appellant's request. This unconstitutional situation is exacerbated, according to the appellant, because the Chief Judge of each circuit has unreviewable authority to decide whether to dismiss a complaint or to empanel an investigating committee,[49] thus giving him unchecked power effectively to "diminish" the compensation of federal judges.

■ We find that Judge Hastings has failed to exhaust the administrative remedies available to him with respect to his Compensation Clause claim. In applying the exhaustion requirement, this court asks whether a party "may be attempting to short circuit the administrative process or whether he has been reasonably diligent in protecting his own interests."[50] When the Director informed Judge Hastings that he lacked authority to make reimbursement *solely upon the Judge's request,* the appellant obviously should have redirected his request for attorney's fees to the Council or to the Conference. Under 28 U.S.C. § 604(h)(1), the Director is required to "pay necessary expenses incurred by the judicial councils of the circuits and the Judicial Conference under section 372 of this title." Before seeking judicial intervention, Judge Hastings should have given the Council or the Conference a chance to determine whether his attorney's fees were a "necessary expense incurred by" either body. If the Compensation Clause does require that the cost of Judge Hastings' defense be reimbursed, the authorities charged with administration of the Act should at least have an opportunity to construe the Act in a manner that comports with the Constitution.

## D.  *Due Process Claims—Facial*

Judge Hastings contends that the Act fails to guarantee the "fundamental fairness" of the proceedings authorized, and that its standards of behavior are so vague and overbroad that it chills the exercise of constitutionally protected rights. As such, he argues, the Act on its face violates the Due Process Clause of the Fifth Amendment.

The appellant's attack on the fairness of the proceedings consists, at least superficially, of a recasting of his separation-of-powers arguments in terms of the Due Process Clause. We have already held that his claim that the Act requires judges to

49.  *See* 28 U.S.C. §§ 372(c)(3), (c)(4).

50.  *Ticor Title Ins. Co. v. FTC,* 814 F.2d 731, 735 (D.C.Cir.1987) (opinion of Edwards, J.) (quoting E. Gellhorn & B. Boyer, Administrative Law and Process 316–19 (1981)).

exercise "executive" (i.e., investigative) functions is precluded by the decision in *Hastings II.* Our holding in this case, see *infra* pp. 106–08, that the statutory standard of judicial conduct is not overbroad and that appellant cannot claim that it is vague likewise forecloses any argument that the Act delegates legislative authority to the judiciary—an argument that would be most implausible in any event. On the other hand, the deeper substructure of his claim may be that the combination of certain functions in the same deliberative body creates an inherent risk of bias in their discharge, even if the same body's exercise of any one of those functions, standing alone, would be permissible.

█ The argument in appellant's brief portrays the due process concern as follows:

The Act combines the power to enact legislation defining the standard [of conduct for judges], to adopt or revise the rules that will govern proceedings to enforce this legislation, and to exercise (or establish the body which will exercise) the final review power in one body—the Conference. A majority of that body, the Chief Justice and the chief judges, also hold the executive power to determine which complaints shall be investigated and who shall conduct the investigations (the chief judges) and to determine who shall exercise the power of adjudication on final review (the Chief Justice). Similarly, the Act delegates to each of the reconstituted councils the power to legislate separate procedural rights for judges in different circuits.

Brief for Appellant at 38. On analysis, this claim boils down to an assertion that the Act has authorized an improper combination of investigative and adjudicative functions, since there is no substance to the appellant's charge that members of the Council or of the Conference are exercising legislative power. Judges must interpret and give meaning-in-fact to the standard of conduct articulated in the Act, but that is logically an inseparable part of an adjudica-

tive function. Likewise, experience rather than pure logic teaches that the power to adopt internal rules of procedure is also inherent in the exercise of adjudicative power by an independent judiciary; if it could not make such rules for itself, then it could not be truly independent.

█ The combination of investigative and adjudicative powers in an administrative body, the Supreme Court has held, does not, without more, violate the Due Process Clause. *Withrow v. Larkin,* 421 U.S. 35, 46–54, 95 S.Ct. 1456, 1464–68, 43 L.Ed.2d 712 (1975). In *Withrow,* a state administrative board was responsible for investigating charges of misconduct against physicians and then determining whether to impose disciplinary sanctions. The Court rejected the petitioner's facial due process attack, which focused on the combination of these functions:

The processes utilized by the Board, however, do not in themselves contain an unacceptable risk of bias.... No specific foundation has been presented for suspecting that the Board had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the evidence to be presented at the contested hearing. The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing.

*Id.* at 54–55, 95 S.Ct. at 1468–69.[51] The Court also stated in *Withrow* that "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication ... must convince that under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequate-

---

**51.** *See also Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *FTC v.* *Cement Institute,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

ly implemented." [52] We find no such risk inherent in the procedures established by the Act.

The fact that federal judges administer the mechanism described by the Act contributes in no small measure to this conclusion. They are called upon every day to put aside considerations not legally relevant to their decisions. A judge who can decide a case one way, notwithstanding inadmissible evidence of which he is aware indicating a different result, is not likely to prejudge a fellow judge's cause. If there is risk here, it is the risk that an empathetic decision-maker poses to the public, not a risk of bias toward the judge against whom a complaint has been lodged.

In addition, the appellant argues that the proceedings violate due process because "[t]he Act *does not require* that the accused judge be permitted to confront the evidence against him or even that he be permitted to appear before the adjudicative tribunals...." [53] Section 372(c)(11) of the Act provides that each Council is to prescribe procedural rules that require, *inter alia*, notice and "an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing...." Apparently, Judge Hastings' point is that these rights are not assured after the "investigating panel" stage of the statutory proceedings. Insofar as the Council or the Conference conducts a further investigation, however, as they are authorized to do, the phrase "investigating panel" may well refer generically to them.

We decline to reach this claim on the merits, however. The appellant may not press a facial due process attack concerning the Act's procedures after the Act has been applied fairly to him. Confronted with an argument not that a judge under

investigation will *necessarily* be denied fair procedures, but only that there *may* be such a denial, depending on how those applying the Act construe it, makes no sense for a court to strike down a statute that has in fact been applied in a constitutional manner. Any complaint the appellant has with the procedures outlined in the Act can be taken up in his challenge to the investigation as it unfolded. Significantly, however, appellant has not argued that the Act as applied to him violated any due process rights of confrontation or attendance.

■ The appellant argues next that the substantive statutory standard authorizing sanctions in cases of "conduct prejudicial to the effective and expeditious administration of the business of the courts," 28 U.S.C. § 372(c)(1), is vague and overbroad, and therefore chills judicial independence and exercise by judges of their First Amendment rights. The overbreadth and vagueness doctrines are related but distinct. A vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity.[54]

The overbreadth doctrine is an exception to the usual rule of constitutional litigation requiring parties to assert only their own interests and forbidding them from raising challenges to a statute based on the rights of third parties. The exception reflects the sensitivity of the first amendment to the potential "chilling" effect that an overbroad statute may have on the protected speech or expression of persons not before the court.[55] Thus, facial overbreadth attacks have been entertained in cases involving statutes that sought to regulate only spoken words; or threatened rights of association; or by their terms, sought to regulate the time, place, or manner of commu-

---

**52.** 421 U.S. at 47, 95 S.Ct. at 1464.

**53.** Brief for Appellant at 37 (emphasis in original).

**54.** *See generally Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

**55.** *See* G. Gunther, Constitutional Law 1148–57 (1985).

nication; or required approval for expressive conduct under laws that delegate unreviewable discretionary power to local functionaries.[56]

■ In this case, however, the overbreadth challenge to the Act fails because the Act is directed primarily against judicial misconduct, not against protected First Amendment activity. As the Supreme Court stated in *Broadrick*:

"It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face.... But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward ... harmful, constitutionally unprotected conduct." [57]

In addition, when a statute seeks to regulate conduct rather than speech, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." [58]

Aside from the fact that the statute, by its terms, regulates "conduct," the legislative history demonstrates that the Act was directed against serious judicial transgressions, not against protected speech.[59] According to the Senate Report, the statutory standard was "intended to include willful misconduct in office, willful and persistent failure to perform duties of the office, habitual intemperance, and other conduct prejudicial to the administration of justice that brings the judicial office into disrepute."[60]

The Senate Report further provided that the standard announced in the Act should be informed by the Code of Judicial Conduct of the American Bar Association, as approved by the Judicial Conference; resolutions of the Conference relating to judicial conduct; and congressional enactments concerning judicial conduct.[61] In addition, any fears that the statutory prohibition might be directed against protected expression are allayed, in large measure, by the explicit exemption of complaints "directly related to the merits of a decision or procedural ruling." [62] Thus, whatever margin exists for reading the Act to apply to protected First Amendment activity, it cannot be said that it "reaches a substantial amount of constitutionally protected conduct," *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).[63]

Thus, in this case, any remaining overbreadth in the terms of the Act is clearly

56. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830 (1973).

57. *Id.* 413 U.S. at 615, 93 S.Ct. at 2917.

58. *Id.; see also CSC v. Letter Carriers*, 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2897–98, 37 L.Ed.2d 796 (1973); *Parker v. Levy*, 417 U.S. 733, 760–61, 94 S.Ct. 2547, 2563–64, 41 L.Ed.2d 439 (1974).

59. It is worth pointing out that federal judges, the individuals to whom the Act is directed, are unusually well qualified to interpret statutes in light of their legislative history.

60. S.Rep. No. 362, 96th Cong., 1st Sess. 9 (1979), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4315, 4323. *See also* H.R.Rep. No. 1313, 96th Cong., 2d Sess. 10 (1980).

61. S.Rep. No. 96–362, at 9. *See also Hastings II*, 783 F.2d at 1513 n. 22.

62. 28 U.S.C. § 372(c)(3)(A)(ii).

63. As evidence of the Act's potential to chill First Amendment activity, the appellant points to a second complaint pending against him, filed by Thomas M. Tucker, a Florida attorney who alleges that Judge Hastings violated laws prohibiting political campaigning by federal employees. The Tucker complaint, however, was not mentioned in the appellant's complaint to the district court, and claims concerning it are not properly before this court. We do note that the existence of such charges against Judge Hastings are hardly probative of a "chilling effect." Indeed, it is by no means clear that the speech to which the complaint is directed is constitutionally protected, since "neither the First Amendment nor any other provision of the Constitution invalidates a law barring ... partisan political conduct by federal employees." *See CSC v. National Association of Letter Carriers*, 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973) (upholding the Hatch Act against a facial attack of its constitutionality).

outweighed by the legitimate and important objective of the Act, especially since there was no practical alternative to a broad statutory standard. It would be literally impossible for Congress to anticipate and to specify every form of properly sanctionable misconduct. Not surprisingly, precedent does not indicate so hypertrophied a concern with overbreadth as to require the impossible.[64]

▮ The appellant's vagueness challenge must also fail, since "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness."[65] There can be no doubt that the charges alleged against the appellant—conspiracy to solicit a bribe and obstruction of justice—are squarely within the statutory prohibition. The Act is certainly clear enough to put the appellant on notice that criminal, and potentially impeachable, misconduct falls within its ambit. And "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."[66]

### E. *Due Process Claims—As Applied*[67]

Judge Hastings alleges certain due process and other constitutional defects in the investigation as it unfolded. He maintains that (1) Judge Johnson, who allegedly expressed his view in the *Borders* opinion that Judge Hastings participated in the conspiracy, tainted the Investigating Committee's proceedings with his "bias in fact;" (2) the members of the Council failed to conduct an independent review of the evidence; and (3) the Council refused to let Judge Hastings have a copy of the Investigating Committee's report, requiring him to travel from Miami to Atlanta with his counsel to examine the report.

Because the district court incorrectly treated these issues as precluded, we remand them for its further consideration. In evaluating the claims, the district court should examine whether Judge Hastings presented his allegations at an appropriate stage in the investigative proceedings, and whether he exhausted his administrative remedies as required by 28 U.S.C. § 372(c)(10).[68] If the district court determines that Judge Hastings did properly raise and exhaust any of his due process claims in the course of the investigation, and administrative review process, it should next consider whether judicial review of such claims is permitted under 28 U.S.C. § 372(c)(10).[69] If judicial review is

---

**64.** *See Arnett v. Kennedy,* 416 U.S. 134, 158–64, 94 S.Ct. 1633, 1646–49, 40 L.Ed.2d 15 (1974) (opinion of Rehnquist, J.) (upholding "for cause" removal standard of civil service statute against challenge based on vagueness and overbreadth).

**65.** *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

**66.** *Village of Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191 (footnote omitted). "The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99, 102 S.Ct. at 1193 (footnote omitted).

**67.** In addition to the due process claims mentioned in this section, appellant (1) renews his Compensation Clause challenge to the Act, now as applied to him; (2) argues that application of the Act to him undermined the exclusive power of the House to impeach; and (3) maintains that double jeopardy and speedy trial concerns are implicated because the proceedings under the Act had the effect of delaying action by the House. Brief for Appellant at 42–45. We have already determined that failure to satisfy the

exhaustion requirement bars our consideration of the Compensation Clause claim at this time, *see supra* at 103. Furthermore, our discussion of the certification issue, *see supra* at 101–103, makes it abundantly clear that, regardless of whether appellant exhausted his remedies before the Council and the Conference, the second and third claims lack merit. Of course, we express no view on whether impeachment by the House and conviction by the Senate are in any way constrained by double jeopardy or speedy trial concerns.

**68.** Section 372(c)(10) provides, in relevant part:
A complainant, judge, or magistrate aggrieved by a final order of the chief judge under paragraph (3) of this subsection may petition the judicial council for review thereof. A complainant, judge, or magistrate aggrieved by an action of the judicial council under paragraph (6) of this subsection may petition the Judicial Conference of the United States for review thereof.

**69.** The appellees argue that judicial review of the due process challenges to the Act as applied is inappropriate under 28 U.S.C. § 372(c)(10),

appropriate, the court should reach the merits of the claims.

*Affirmed in part, reversed and remanded in part.*

# APPENDIX

## I

The Act established a formal mechanism by which federal judges could be disciplined by fellow judges for "conduct prejudicial to the effective and expeditious administration of the business of the courts." 28 U.S.C. § 372(c)(1). "Any person" alleging such conduct on the part of a judge may set that mechanism in motion by filing with the clerk of the circuit in which the judge sits a complaint containing a "brief statement of the facts constituting such conduct." *Id.* The clerk of the court must then transmit the complaint to the chief judge of the circuit (or to the next most senior active service judge of that circuit, if the chief judge is the subject of the complaint), as well as to the judge who has been named in the complaint. The chief judge, after "expeditiously reviewing a complaint," *id.* § 372(c)(3), may take any of several courses of action. He may dismiss the complaint if it either (1) fails to conform with the requirements for a complaint stated above, or (2) directly relates to the merits of a decision or procedural ruling, or (3) is frivolous. *Id.* § 372(c)(3)(A). The chief judge may also conclude the proceeding if he finds that "appropriate corrective action has been taken." *Id.* § 372(c)(3)(B).

If the chief judge neither dismisses the complaint nor concludes the action, he must appoint a special committee, consisting of himself plus equal members of circuit and district judges of the circuit, to investigate the facts and allegations contained in the complaint. *Id.* § 372(c)(4). The Act grants the committee the power to conduct an investigation "as extensive as it considers necessary." *Id.* § 372(c)(5).

When the committee has completed its investigation, it is required to file with the judicial council of the circuit[1] "a comprehensive written report ... present[ing] both the findings of the investigation and the committee's recommendations for necessary and appropriate action by the judicial council of the circuit." *Id.* § 372(c)(5). Upon receiving the committee's report, the circuit judicial council may conduct any additional investigation it considers necessary. In addition, the judicial council "shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit." *Id.* § 372(c)(6)(B). Such action may include requesting that the judge voluntarily retire; ordering that, "on a temporary basis for a time certain," no further cases be assigned to the judge; and public or private censuring of the judge. *Id.*

Rather than take such action itself, however, the judicial council has the option of referring a complaint, along with the record of any proceedings undertaken to that point and the council's recommendations for appropriate action, to the Judicial Conference of the United States. *Id.* § 372(c)(7)(A).[2] The Act also requires transfer to the Judicial Conference of any

---

the relevant portion of which provides that "all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." Although we do not decide the issue, we merely note for the district court on remand to consider the possibility that the actions under challenge here are not "orders" or "determinations" within the meaning of the Act, and therefore not covered by the bar to judicial review. We further note that sensitive and unsettled questions of constitutional law would arise if the challenged actions are covered by the prohibition on judicial review. *See Weinberger v. Salfi,* 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975).

1. The judicial council of each circuit is presided over by the chief judge of the circuit and consists, in addition, of a certain number of circuit and district judges of that circuit, the number to be fixed by a majority vote of the active circuit judges of that circuit in accordance with 28 U.S.C. § 332(a) (1982).

2. The Judicial Conference is composed of the chief judges of all the circuits plus a designated district judge from each circuit, and is presided over by the Chief Justice of the United States. *See* 28 U.S.C. § 331 (1982).

case in which the circuit judicial council determines, on the basis of a complaint and an investigation under this subsection, or on the basis of "information otherwise available to the council," *id.* § 372(c)(7)(B), that a judge has engaged in conduct that either (1) might constitute one or more grounds for impeachment under Article I of the Constitution, or (2) "in the interest of justice, is not amenable to resolution by the judicial council." *Id.*

Having had proceedings transferred to it from a circuit judicial council via either of the above paths, the Judicial Conference "after consideration of the prior proceedings and such additional investigation as it considers appropriate," *id.* § 372(c)(8), shall by majority vote, take any of the courses of action, described above, that were open to the judicial council. In addition, if the Conference determines—either on its own or upon review of the judicial council's determination—that consideration of impeachment may be warranted, it shall transmit its determination to the United States House of Representatives "for whatever action the House of Representatives considers to be necessary." *Id.*

In any investigation undertaken pursuant to the Act, the investigating body, be it the special committee, the circuit judicial council, or the Conference, is vested with full subpoena powers. *Id.* § 372(c)(9)(A), (B); *see id.* §§ 331, 332(d). The Act also gives each such body the power to prescribe rules for the conduct of its proceedings, although such rules must provide certain minimum procedural safeguards.[3]

The Act expressly limits the availability of review of orders and determinations made under the Act. *See* 28 U.S.C. § 372(c)(10). A petition for review may be filed with the circuit judicial council by a complainant or judge aggrieved by an order of the chief judge, pursuant to § 372(c)(3), dismissing a complaint or concluding a proceeding, *see supra* [770 F.2d at] p. 1095. An aggrieved complainant or judge may also petition the Judicial Conference for review of action taken by the judicial council pursuant to § 372(c)(6). With these two exceptions, "all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* at § 372(c)(10).

BUCKLEY, Circuit Judge, concurring in part and dissenting in part:

While I concur with the substance of the court's opinion, I must disagree with the majority's treatment of the Judicial Conference certification mandated by Congress. In referring to 28 U.S.C. § 372(c)(7)(B), the majority correctly notes:

> Only when a council does elect—in its discretion—to consider the impeachment question, and determines that impeachment may be warranted, must it certify that determination to the Conference. The determination is discretionary but once made, the communication is mandatory. Because that communication is wholly within the judicial branch, however, it does not even suggest any separation-of-powers problem.

Majority opinion at 102. As the certification language in section 372(c)(8) is virtually identical to that to which the majority refers, I assume it would also affirm that if the Conference should concur in a council's determination of possible impeachability, certification would also be mandatory; but as the Conference's certification would be to the House of Representatives, I take it

---

3. Such rules shall contain provisions requiring that—
    (A) adequate prior notice of any investigation be given in writing to the judge or magistrate whose conduct is the subject of the complaint;
    (B) the judge or magistrate whose conduct is the subject of the complaint be afforded an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing; and
    (C) the complainant be afforded an opportunity to appear at proceedings conducted by the investigating panel, if the panel concludes that the complainant could offer substantial information.
28 U.S.C. § 372(c)(11) (1982).

the majority would concede that in such a case there would be at least a "suggest[ion] of [a] separation-of-powers problem."

The majority finds, however, that even the suggestion is without merit, for two reasons. First,

> [t]he Conference is ... free of any statutory compulsion ever to confront the impeachment issue.... Regardless of what determination, if any, a council has made, the Conference always has the option to refrain from making any determination ... of whether a judge's misconduct may warrant impeachment.

*Id.* at 102. Second, even if the Conference were to make such a determination and, as commanded by statute, "so certif[ied] and transmit[ted] the determination and the record of proceedings to the House of Representatives," section 372(c)(8), such a communication is harmless and, in any event, "is without independent constitutional significance." *Id.* at 102. I address these arguments in turn.

The majority correctly states that the statute does not compel the Conference to address the question of impeachability; but while it does not require that the issue be addressed, it does command a process that at times will compel the principled jurists who comprise the Conference to reach the conclusion that the majority assures us they "ha[ve] the option to refrain from making" in a formal manner. If a council certifies a determination that a particular judge "has engaged in conduct which might constitute one or more grounds for impeachment under article I of the Constitution," the Judicial Conference is required by section 372(c)(8) to give consideration to the proceedings before the council. Therefore, the Conference has a clear duty to review the record that induced the council to conclude that one of its colleagues may have engaged in impeachable conduct.

It is hard for me to believe that the members of the Conference, all of them experienced jurists, will not emerge from their examination of the evidence without some clear view as to whether it supports the council's conclusion of possible impeachability; and if the evidence in question supports charges of particularly egregious conduct, that they would not feel compelled, out of their concern for the integrity of the federal judiciary, to accept the statute's invitation to confirm their conclusion through a formal determination. In short, I believe there is an element of unreality in the majority's reliance on the formal right of the Conference to avoid what under particular circumstances will undoubtedly be perceived as a clear duty. In such a case, I do not see how one can conclude that the Conference is truly free to avoid making a determination, as the "choice" with which it is presented allows for but one principled conclusion, and therefore allows for no choice at all.

Furthermore, I am not persuaded that certification to the House is as harmless an event as the majority would have us believe, or that it can be equated with "a private informant's suggestion that a judge may have committed an impeachable offense," *id.,* however eminent the informant. A Conference determination, after all, reflects the considered conclusion by the Chief Justice of the United States and the chief judges of all the circuit courts of appeal, after review of a voluminous record assembled with the help of sworn testimony and the exercise of subpoena power, that a particular judge has engaged in behavior that may warrant impeachment. The potential impact of that determination is such that I would not reject as entirely frivolous appellant's claim that a Conference certification "might substantially alter the political context in which impeachment recommendations are brought before the House from that intended by the Framers—making it more difficult for the House to decline to impeach in the face of an express recommendation." *Id.* n. 48 (citation omitted).

Nor is it self-evident that "any difference in the effect on Congress" between a private citizen's recommendation and a certification by the Conference "is without constitutional significance ... for it is beyond doubt that the Conference, just like any other individual or group, may inform the

Congress when it believes that a judge may have breached his public trust." The problem with this argument is that the constitutional issue raised by appellant is not whether the Conference is free to inform the House of its conclusion as to the possible impeachability of a particular judge, but whether the House may constitutionally command that it do so. The former does not impinge on the separation of powers; the latter might.

I have reached no conclusion as to whether the certification requirement represents such an unconstitutional encroachment on an independent branch of the federal government. I do believe, however, that we should either address the issue directly or choose a less ingenuous way to avoid reaching the constitutional issue.