85 F.3d 701

## In the Matter of a CHARGE OF JUDICIAL MISCONDUCT OR DISABILITY

**Judicial Council Complaint No. 95–14.**

Judicial Council for the District of Columbia Circuit.

June 18, 1996.

---

**15.** This "presumptive waiver" rule is "based on the fact that a very large number of broadcast outlets and separate voices will remain in these large markets, thereby preventing any single outlet or firm from obtaining undue economic power or undue sway over public opinion. Indeed, we believe that our 'top 25 markets/30 voices' standard is conservative and may far exceed the market size and the number of voices necessary to ensure diversity and prevent competitive abuses." 4 F.C.C.R. at 1751. *See* Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, 111, sec. 202(d) (instructing FCC to extend its presumptive waiver policy to top 50 markets "consistent with the public interest, convenience, and necessity").

**16.** The footnote reads in full:

In addition, we note that CapCities/ABC requests that the Commission extend the application of the top 25 markets/30 voices test (one-to-a-market waiver process) to television licensees who propose to acquire more than one radio station in a community in the same service. Possible revisions to the one-to-a-market prohibition, including the impact of revised ownership limits, are being addressed in the Commission's television ownership proceeding. Until the issue is resolved, we will consider waiver requests using the case-by-case waiver approach, taking into account our general conclusions in this proceeding regarding the public interest in a strengthened radio service. 7 F.C.C.R. 6387 n. 40 (citations omitted).

Before: WALD, BUCKLEY, GINSBURG, RANDOLPH, ROGERS, and TATEL, Circuit Judges; PENN, Chief Judge of the United States District Court, and JOHNSON, JACKSON, SPORKIN, LAMBERTH, and KESSLER, District Judges.*

## *O R D E R*

By Order filed November 27, 1995, Chief Judge Edwards dismissed "for failure to allege conduct prejudicial to the effective and expeditious administration of the business of the courts," the complaint filed herein against a judge of the United States Court of Appeals for the District of Columbia Circuit. Thereafter, complainant filed a petition addressed to the Judicial Council seeking review of the Order of dismissal. Upon consideration thereof, it is

ORDERED, by the Judicial Council, that the Chief Judge's Order be affirmed, and the petition for review be denied, for the reasons stated in the accompanying Opinion for the Council filed this date.

The Clerk is directed to send copies of this Order and accompanying Opinion to complainant and to the subject judge. *See* D.C.CIR. JUD. MISCONDUCT R. 8(e)(1).

Before: WALD, BUCKLEY, GINSBURG, RANDOLPH, ROGERS, and TATEL, Circuit Judges; PENN, Chief Judge of the United States District Court, and JOHNSON, JACKSON, SPORKIN, LAMBERTH, and KESSLER, District Judges.*

Opinion for the Judicial Council filed by Circuit Judge RANDOLPH.

Concurring opinion filed by Circuit Judge TATEL, in which Circuit Judge WALD and District Judge KESSLER join.

District Judge JACKSON concurs in the result.

RANDOLPH, Circuit Judge:

A complaint of misconduct has been lodged against a judge on the "Special Division" of

* EDWARDS, Chief Judge of the Circuit, took no part in the consideration or disposition of this petition.

the United States Court of Appeals for the District of Columbia Circuit (49 U.S.C. § 49) who participated in the appointment of an independent counsel to investigate the late Secretary of Commerce Ronald H. Brown. The complaint alleges that the judge is a close friend of a United States Senator who called for the appointment of an independent counsel to investigate Secretary Brown and that the Senator employs the judge's wife as a receptionist. These ties, according to the complaint, created a situation in which the judge's impartiality might reasonably be questioned, and should have caused the judge to disqualify himself. The judge's failure to do so, the complaint concludes, constituted "conduct prejudicial to the effective· and expeditious administration of the business of the courts" within the meaning of 28 U.S.C. § 372(c)(1), and warrants disciplinary action against the judge.

Chief Judge Edwards dismissed the complaint, holding that the facts alleged, even if true, did not create the appearance of partiality. The Chief Judge reasoned that the decision whether to appoint an independent counsel rests with the Attorney General, *id.* § 592(c), and once the Attorney General requests such an appointment, the Special Division must comply, *id.* § 593(b)(1). Therefore, the ties between the judge and the Senator could not have affected the decision whether to appoint an independent counsel. The only decision within the Special Division's control was who should be appointed, and there is no indication that the person appointed was unqualified or biased against Secretary Brown. The Chief Judge therefore determined that there was "no good basis upon which to question the actions of the judge or the decision of the Special Panel." The complainant has now petitioned the Judicial Council for review of the Chief Judge's decision.

The complaint and the petition assert that the judge's conduct violated 28 U.S.C. § 455(a) and the corresponding Canon 3C(1) of the Code of Conduct for United States Judges, both of which require federal judges to disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned." The Chief Judge's decision

questioned the applicability of these provisions, but nonetheless resolved the case by "assuming, *arguendo,* that the appointment of an independent counsel is a 'proceeding' to which the recusal statute and Canon 3(C) apply." We share the Chief Judge's doubts about the applicability of § 455 and Canon 3C. Both the statute and the canon state that "'proceeding' includes pretrial, trial, appellate review, or other stages of litigation." 28 U.S.C. § 455(d)(1); Canon 3C(3)(d). The appointment of an independent counsel does not fit comfortably within this description. The statute and Canon 3C seek to preserve judicial "impartiality," which suggests an adversary context and adjudication.

Appointments are not mentioned in § 455, but are addressed separately in Canon 3B, under the heading of "administrative responsibilities." Canon 3B(4) comes closest to the situation at hand: a judge should exercise the appointment "power only on the basis of merit, avoiding nepotism and favoritism." Canon 3 states generally that "[a] judge should perform the duties of the office impartially and diligently," and defines judicial duties to include "all duties of the office prescribed by law." The Reporter's Notes to the Code of Judicial Conduct indicate that such duties include both adjudicative and nonadjudicative duties "prescribed by constitution, statute, rule, regulation, or common law." E. WAYNE THODE, REPORTER'S NOTES TO CODE OF JUDICIAL CONDUCT 50 (1973); *see* Committee on Codes of Conduct, Compendium § 3.6–8(b) (1995) ("Canon 3 rules on disqualification apply to all of judge's judicial duties...."). And Canon 2 provides that "[a] judge should avoid impropriety and the appearance of impropriety in all activities."

We do not mean ·to suggest that every violation of Canons 2 and 3 amounts to "conduct prejudicial to the effective and expeditious administration of the business of the courts" within 28 U.S.C. § 372(c)(1). The Commentary to Canon 1 states that "[m]any of the proscriptions in the Code are necessarily cast in general terms, and it is not suggested that disciplinary action is appropriate where reasonable judges might be uncertain as to whether or not conduct is proscribed." Canons 2 and 3 certainly qualify as provi-

sions cast in general terms. *See In re Charge of Judicial Misconduct*, 62 F.3d 320 (9th Cir.1995); *In re Barry*, 946 F.2d 913, 914 (D.C.Cir.1991) (per curiam). Still, there is some indication that judicial councils should be guided in part by the Canons in determining whether a § 372(c)(1) violation occurred. S. REP. No. 362, 96th Cong., 1st Sess. 9 (1979), *reprinted in* 1980 U.S.C.C.A.N. 4315, 4323.

Even when we take the Canons into account, we reach the same conclusion as did the Chief Judge. We agree with him that the Interim Advisory Committee on Judicial Activities Advisory Opinion No. 11 supports his decision. The Opinion, adopted in 1970 and interpreting an older code of judicial conduct, discusses the question whether a judge should recuse himself in "cases where one of the attorneys is a friend of long standing and is also a godfather of one of the judge's children." The complainant thinks the Opinion is no longer valid because it embodies merely a subjective standard. This is not an accurate view of the Opinion. The Opinion expressly adopts a "twofold test" that considers both "whether the judge feels capable of disregarding the relationship and *whether others can reasonably be expected to believe that the relationship can be disregarded*" (italics added). The italicized language states an objective test, independent of the judge's personal view of the circumstances.

Advisory Opinion No. 11 obviously is not directly on point. Unlike a lawyer-friend representing a party in a case before the judge, the Senator did not appear before the Special Division. A closer analogy to Advisory Opinion No. 11, and one that must be fairly common, would be a judge's sitting on a case involving the constitutionality of a statute a Senator-friend sponsored. If judges may decide such cases without violating their ethical duties—and we have no doubt they may—the circumstances here pose even less concern, if only because the Special Division was not adjudicating the merits of a controversy between opposing parties. And if the judge's relationship with the Senator is not disqualifying, we do not believe his wife's employment as the Senator's receptionist can be. Of course one might say that the judge, because of his wife's position, would be grateful to the Senator and inclined to act or vote in a way the Senator would approve. But the same could be said in cases involving statutes the Senator endorsed or issues the Senator supports or opposes. Such cases doubtless come before this judge, when he is sitting as a circuit judge, yet no reasonable person would think he should recuse himself in those cases. Moreover, the fact that the Senator and the judge are close friends undercuts any suggestion that the judge would take action in order to curry favor and insure his wife's continued employment. The judge's wife was not in a policy-making position; she was employed as a receptionist and there is nothing to indicate that she had any involvement in formulating the Senator's stance on the need for an independent counsel.[1]

The complainant relies heavily on *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), but we think the case has nothing to do with the situation before us. The main issue in *Liljeberg* was whether § 455(a) could "be violated based on an appearance of partiality, even though the judge was not conscious of the circumstances creating the appearance of impropriety." *Id.* at 858, 108 S.Ct. at 2201. The Court distinguished

---

1. Suppose the judge's wife worked not as a receptionist for a Senator, but as an associate for a law firm representing a litigant in proceedings before the Special Division. Between the two situations, one would think the latter raised far more serious problems. Yet even the wife's employment as an associate would not require the judge to recuse himself according to the long-standing view of the Committee on Codes of Conduct of the Judicial Conference of the United States. In Advisory Opinion No. 58, adopted August 9, 1978, the Committee determined that there would be no appearance of impropriety so long as the associate-spouse had not worked on the case and did not stand to profit from it, as would a partner in the firm. Seven Justices of the Supreme Court, in a 1993 joint policy statement on recusal, basically adopted the same approach regarding close relatives of the Justices. *See* JEFFREY M. SHAMAN ET AL., JUDICIAL CONDUCT AND ETHICS 120 (1995).

§ 455(a) from § 455(b)(4),[2] holding that scienter is not an element of a § 455(a) violation and that a "judge's lack of knowledge of a disqualifying circumstance ... does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons." 486 U.S. at 859, 108 S.Ct. at 2202. Of course it is quite impossible to expect judges to disqualify themselves based on facts they do not know. Nevertheless, the Court ruled that the judge should have disqualified himself and vacated the judgment he had rendered after he realized that an organization with which he was affiliated had a stake in the litigation. *Id.* at 861, 108 S.Ct. at 2203. According to the Court, this was the proper interpretation of § 455 because "the provision can also, in proper cases, be applied retroactively." *Id.* The Court indicated that some violations of § 455(a) might be harmless, but that there should not be "an absolute prohibition against any relief in cases involving forgetful judges." *Id.* at 862, 108 S.Ct. at 2204.

The situation here does not involve disqualifying circumstances the judge forgot and then belatedly remembered. The judge knew of his wife's employment and he knew of his friendship with the Senator. The issue framed in the complaint is not lack, of knowledge, but whether those two circumstances created an appearance of impartiality.

In a supplement to his petition, the complainant brings *United States v. Tucker,* 78 F.3d 1313 (8th Cir.1996), to our attention. Concerned that the close relationship between the district judge and individuals who were under criminal investigation created a risk that the judge might not be perceived as impartial, the court of appeals in *Tucker* reassigned the case to a different judge on remand. *Id.* at 1324–25. *Tucker* would resemble this matter only if the Senator were the subject of a criminal proceeding over which the Special Division judge was presiding. Then there could be room for supposing the judge's rulings might be affected. The district judge in *Tucker* at one time may have so viewed his situation; published re-ports quoted him as saying he would recuse if anything came up regarding his friends. *Id.* at 1323. The Special Division judge, of course, has made no such public comments and there is no reason why any reasonable observer would have thought his participation in the appointment of the independent counsel, a matter in which his judgment was confined to choosing someone to fill a post the Special Division had the duty to fill, amounted to conduct prejudicial to the effective and expeditious administration of the Special Division's business.

*Complaint dismissed.*

TATEL, Circuit Judge, with whom WALD, Circuit Judge, and KESSLER, District Judge, join, concurring:

I agree that the judge's failure to recuse himself from participating in the appointment of the independent counsel did not constitute "conduct prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 372(c)(1). I write separately to underscore two principles that are implicit in the Council's opinion.

First, Canons 2 and 3 of the Code of Conduct for United States Judges apply to judges' activities on the Special Division. Canon 2 provides that "[a] judge should avoid impropriety and the appearance of impropriety in *all* activities"; Canon 3 requires that "[a] judge should perform the duties of the office"—which includes all "duties prescribed by law"—"impartially and diligently." CODE OF CONDUCT FOR UNITED STATES JUDGES Canons 2–3, *reprinted in* 2 ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, GUIDE TO JUDICIARY POLICIES AND PROCEDURES, ch. II, at I–2, I–9 (1993 ed.) (emphasis added). Second, in determining whether a judge on the Special Division has violated 28 U.S.C. § 372(c)(1), the Judicial Council may base its decision on whether the judge has violated one of these general canons. *See Hastings v. Judicial Conference,* 829 F.2d 91, 106 (D.C.Cir.1987); S.REP. NO. 362, 96th Cong., 1st Sess. 9 (1979); CODE OF CONDUCT FOR

---

**2.** 28 U.S.C. § 455(b)(4) provides that a judge shall disqualify himself if "[h]e knows that he, individually or as a fiduciary, or his spouse ..., has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

UNITED STATES JUDGES Canon 1 cmt. *reprinted in* 2 ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, GUIDE TO JUDICIARY POLICIES AND PROCEDURES, ch.I, at I–1 to 1–2. While not finding sanctionable conduct in this instance, the Judicial Council today thus affirms that judges may be held accountable for failing to avoid the appearance of impropriety whether performing their traditional judicial roles or serving on the Special Division.

I also write separately because I am not entirely comfortable with certain aspects of the Council's analysis of whether the judge's conduct created an "appearance of impropriety." In particular, I do not agree that "the circumstances here pose even *less* concern" than a "judge's sitting on a case involving the constitutionality of a statute the Senator-friend sponsored." Majority op. at 138 (emphasis added). In my view, the circumstances here present greater concern, although still not enough to create an appearance of impropriety.

An appearance of impropriety exists only when a reasonable person, "with knowledge of all the relevant circumstances that a reasonable inquiry would disclose," would believe that "the judge's ability to carry out [his] responsibilities with integrity, impartiality, and competence was impaired." CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 2(a) cmt., *reprinted in* 2 ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, GUIDE TO JUDICIARY POLICIES AND PROCEDURES, ch.I at I–3. Accordingly, the risk of an *appearance* of bias exists only when there is genuine risk of *actual* bias. Generally speaking, judges cannot appear biased if they have no opportunity for wrongdoing, such as when they perform purely ministerial tasks with full public disclosure, or if they have no incentive for wrongdoing, such as when neither a judge, nor anyone a judge knows, has a personal stake in the matter. In contrast, an appearance of impropriety would exist if a judge not only had an opportunity for impropriety, because the judge exercised discretion, but also had a strong incentive for impropriety, because, for example, the judge or the judge's spouse had a direct financial stake in the matter before the court.

Like most judicial activities, Special Division proceedings provide some opportunity for actual impropriety. Whether or not the opportunity is less than in a merits panel, *see* Majority op. at 138 (stating that there is less concern "if only because the Special Division was not adjudicating the merits of a controversy between opposing parties"), an opportunity for impropriety exists because the special panel exercises some degree of discretion. Although the Special Division can appoint an independent counsel only upon the Attorney General's recommendation, it has considerable latitude in deciding whom to appoint and in defining the initial scope of the counsel's jurisdiction. *See* 28 U.S.C. § 593(b)(2)-(3) (1994). While not at issue here, the Special Division also has authority to expand the independent counsel's jurisdiction or to appoint another independent counsel to pursue matters arising during the course of an investigation, *see* § 593(c)(2)(C), to terminate an independent counsel's investigation, *see* § 596(b)(2), to award attorneys' fees, *see* § 593(f), and to release information to Congress and the public, *see* §§ 592(e), 593(b)(4), 593(g), 594(h)(2). The Special Division also exercises its discretion without all of the institutional safeguards—such as oral argument in open court and the obligation to follow precedent—that help to assure impartiality in more conventional judicial proceedings.

With respect to the incentive for wrongdoing, because this case involves not only a social relationship between the judge and the Senator, but also a professional relationship between the judge's wife and the Senator, I think the incentive for wrongdoing is potentially greater than when a judge reviews a statute sponsored by a Senator-friend. The wife's employment poses additional potential risks: that a judge might want to tilt the scales in order to do a favor either (1) for his wife, because she had a professional interest in the matter, or (2) for the Senator, in return for employing the judge's wife. Notwithstanding these potential risks, I agree that the incentives here were insufficient to create an appearance of impropriety under Canon 2.

By itself, the judge's friendship with the Senator poses an insufficient incentive for wrongdoing to lead a reasonable observer to doubt the judge's impartiality. Reasonable observers understand that federal judges may in the course of their lives have established friendships with those serving in the other branches of government; reasonable observers also presume that federal judges, like the vast majority of unelected public officials, are able to disregard the political views of their friends and carry out their responsibilities in a fair and impartial manner. *See United States v. Jordan,* 49 F.3d 152, 157–58 & n. 6 (5th Cir.1995) (friendship between judge and a person with an interest in the case does not necessarily result in an appearance of impropriety); *United States v. Murphy,* 768 F.2d 1518, 1537–38 (7th Cir. 1985) (an ordinary friendship between judge and lawyer appearing in case does not create an appearance of impropriety).

The only additional circumstance that could affect the judge's impartiality is the professional relationship between the judge's wife and the Senator. While a reasonable person could believe that a judge acted to further his wife's professional interests when the wife has been involved in the matter before the court, *see* 2 ADMINISTRATIVE OF-FICE OF THE UNITED STATES COURTS, GUIDE TO JUDICIARY POLICIES AND PROCEDURES, ch. 5, § 3.2–2(a), (a–1), (f), (*l*), no one has alleged that the judge's wife in this case was involved either directly or in a supervisory capacity in developing the Senator's stance on the appointment of the independent counsel. Nor could a reasonable person possibly believe that the wife's initial or continued employment hinges on the judge's decisions. No one has alleged that the Senator customarily makes employment decisions based on how his employees' spouses perform their jobs, or that he has done so in this case.

In sum, because the alleged relationships with the Senator would not cause a reasonable person to doubt the judge's impartiality, I agree that the judge's failure to recuse himself did not constitute "conduct prejudicial to the effective and expeditious administration of the business of the courts."