196 F.3d 1285 (D.C. Cir. 1999)
 IN THE MATTER OF A CHARGE OF JUDICIAL MISCONDUCT OR DISABILITY
 No. 99-11
 U.S. Court of Appeals, District of Columbia Circuit
 November 17, 1999
 
 1
 Before: Williams, Acting Chief Judge of the Court.
 
 ORDER
 
 2
 Upon consideration of the complaint herein, filed against nine judges of the United States District Court for the District of Columbia pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 and the Rules of the Judicial Council for the District of Columbia Circuit Governing Complaints of Judicial Misconduct or Disability, it is
 
 
 3
 ORDERED, for the reasons stated in the attached Opinion, that the complaint be dismissed as frivolous under 28 U.S.C. 372(c)(3) (1994).
 
 
 4
 The Clerk is directed to send copies of this Order and accompanying Opinion to complainant and the subject judges. See 28 U.S.C. 372(c)(3) (1994); D.C. Cir. Jud. Misconduct R. 4(f)(1).
 
 
 5
 Stephen F. Williams, Acting Chief Judge,
 
 
 6
 This matter involves a complaint of judicial misconduct, made pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 ("the Judicial Councils Act"). The Act seeks to ensure that federal court of appeals, district, bankruptcy, and magistrate judges will not "engage[ ] in conduct prejudicial to the effective and expeditious administration of the business of the courts." 28 U.S.C. 372(c)(1) (1994). "Any person" who has reason to believe that a judge has engaged in such conduct may file a written complaint, along with a brief statement of the facts constituting such conduct, with the Clerk of the Court of Appeals. Id. The matter is then referred to the Chief Judge of the Circuit, who, by written order, may dismiss the complaint if it is (i) not in conformity with section 372(c)(1); (ii) directly related to the merits of a decision or procedural ruling; or (iii) frivolous. See id. 372(c)(3)(A); D.C. Cir. Jud. Misconduct R. 4(c). Under Rule 4(c)(3) of the Rules of the Judicial Council for the District of Columbia Circuit Governing Complaints of Judicial Misconduct or Disability ("Misconduct Rules"), "frivolous" complaints include ones "making charges that are wholly unsupported." D.C. Cir. Jud. Misconduct R. 4(c)(3).
 
 
 7
 The instant complaint (in the form of a letter dated August 30, 1999 and a Supplement dated September 15, 1999 ("Supplement")) involves charges against nine judges of the United States District Court for the District of Columbia, and raises two distinct allegations of misconduct. First, in light of press reports that eight subject judges, all appointed by President Clinton, hold monthly meetings, complainant requests an investigation of "[w]hether substantive or procedural case issues were discussed concerning lawsuits against or concerning the Clinton Administration during [these meetings] and, if so, were various courses of action also discussed and/or decided upon in an effort to obtain the most favorable results for a Democrat/Clinton Administration?" Supplement at 2-3. Second, complainant requests an investigation as to whether one of the subject judges bypassed the random case-assignment system usually employed by the District Court in order to assign two criminal cases involving friends of President William Jefferson Clinton to Clinton- appointed judges "because she believed, or had reason to believe, that recent Clinton appointees would be more disposed to render decisions favorable to a Democrat/Clinton Administration." Id. at 2.
 
 I.
 
 8
 According to press reports attached to the complaint, it is an "open secret" that the eight subject judges appointed by President Clinton meet together regularly. The complaint in effect contains three allegations: (1) that the eight subject judges meet regularly in private, without the other members of the District Court; (2) that "cases concerning alleged misconduct and illegality in the Clinton Administration" may have been topics of discussion; and (3) that such discussions may have had improper components, namely, efforts to increase the likelihood that the cases were treated or resolved in such a way as "to obtain the most favorable results for a Democrat/Clinton Administration." The charge that the subject judges met and discussed their cases is not in itself troubling. I am aware of no rule, nor has any been cited by complainant, that prohibits District Court judges from conferring with other members of their court about pending cases, assuming the other judges are not ones who would have been required to recuse themselves as to any of the cases discussed. Far from constituting misconduct, such discussions might well improve the quality of decisionmaking.
 
 
 9
 The third allegation is quite a different matter. It would clearly be an impropriety for judges to meet for the purpose of making their judicial rulings provide advantage to any administration or political party. See Code of Conduct For United States Judges, Canon 3(A)(1), reprinted in 2 Administrative Office of the United States Courts Guide to Judiciary Policies and Procedures, ch. I, at I-4 (1999 ed.) ("A judge ... should not be swayed by partisan interest...."). As to this element, however, the complaint fails to assert facts supporting a reasonable inference of the alleged impropriety. The only fact seemingly offered is that the discussions allegedly occurred during regular meetings to which only Clinton appointees were invited. Apparently implicit in complainant's readiness to draw the inference that improper behavior has occurred is a supposition that the repeated gathering of judges appointed by a president of one political party, and perhaps themselves belonging to that party, is improbable in the absence of an intent to distort the course of law for the benefit of that president and that party. But judges appointed by a single administration are likely to be drawn together by all sorts of common interests. Those common interests may, of course, include shared political outlooks and interests in cases pending in the same court. But the possibility that judges of a harmonious political outlook use the alleged meetings as an occasion for discussion of cases does not in itself carry any inference that they also use them for conversations that would violate the canon against partisan interest. Thus their meetings are easily understood without reference to any illicit purpose.
 
 
 10
 As support for complainant's inference, then, this leaves only the idea that an opportunity for impropriety will in fact prove the occasion of impropriety. Implicit in this reasoning is perhaps a still broader notion-that judges will commonly harbor such deep sympathy or gratitude for the president that appointed them that they cannot be impartial in any case that concerns allegations of illegality or impropriety by the executive branch, its officials, or friends of the president. Complainant accordingly refers to the fact that Clinton appointees on the Eighth Circuit recused themselves in the Jones v. Clinton appeal, suggests that a local rule be adopted requiring "this practice" in the District of Columbia Circuit, see Supplement at 4 n.1, and attaches a list of cases pending before the subject judges in which complainant is a party and in which there are issues regarding the propriety of conduct by various government entities. But although opportunity for impropriety is essential, it is far from sufficient. Alone it is little evidence-certainly not enough to overcome the assumption that judges will honor their oaths of office to "administer justice without respect to persons" and to "faithfully and impartially discharge and perform all ... duties incumbent upon [them] ... under the Constitution and laws of the United States." 28 U.S.C. 453.
 
 
 11
 Even recast as an assertion of an "appearance of impropriety" the charges fail. An appearance of impropriety exists only when a reasonable person, "with knowledge of all the relevant circumstances that a reasonable inquiry would disclose," would believe that "the judge's ability to carry out [his] responsibilities with integrity, impartiality, and competence [was] impaired." Code of Conduct for United States Judges Canon 2A cmt., reprinted in 2 Administrative Office of The United States Courts, Guide to Judiciary Policies And Procedures, ch. I at I-3. But reasonable observers do not take so cynical a view of the judiciary: they "understand that federal judges, ... like the vast majority of unelected public officials, are able to disregard the political views of their friends and carry out their responsibilities in a fair and impartial manner." Charge of Judicial Misconduct or Disability, 85 F.3d 701, 707 (D.C. Cir. Jud. Council 1996) (Tatel, J., concurring). Here the facts are too slender to convince the reasonable person otherwise-to believe that the subject judges have employed their gatherings for the purpose of subverting the law to crass political purposes.
 
 
 12
 As the facts alleged give no reason to infer misconduct, it is inappropriate to impose on the court the burdens of an investigation. The complaint of misconduct is "wholly unsupported" and is dismissed as frivolous pursuant to 28 U.S.C. §§ 372(c)(3). See Charge of Judicial Misconduct or Disability, 170 F.3d 1152, 1155 (D.C. Cir. Jud. Council 1999) (dismissing as frivolous a claim of bias that was "entirely unsupported"); Complaint of Doe, 2 F.3d 308, 311 (8th Cir. Jud. Council 1993) (dismissing as frivolous unsupported allegations of conspiracy and bias); Charge of Judicial Misconduct, 691 F.2d 924, 925 (9th Cir. Jud. Council 1982) (charge of conspiracy unsupported by specific factual allegations was properly dismissed by the chief judge as frivolous).
 
 
 13
 I of course express no opinion as to whether the holding of the meetings may, as alleged in certain press clippings attached to the complaint, cause a "loss of collegiality" in the District Court. Assuming the conduct has such an effect, it would not thereby constitute "conduct prejudicial to the effective and expeditious administration of the business of the courts." D.C. Cir. Jud. Misconduct R. 4(c)(1) ("A complaint will be dismissed if the chief judge concludes [ ] that the claimed conduct, even if the claim is true, is not 'conduct prejudicial to the effective and expeditious administration of the business of the courts.' "). Such prejudicial conduct includes the "use of the judge's office to obtain special treatment for friends and relatives, acceptance of bribes, improperly engaging in discussions with lawyers or parties to cases in the absence of representatives of opposing parties, and other abuses of judicial office," D.C. Cir. Jud. Misconduct R. 1(b), and, as suggested by the Senate Report, "is intended to include willful misconduct in office, willful and persistent failure to perform duties of the office, habitual intemperance, and other conduct prejudicial to the administration of justice that brings the judicial office into disrepute." S. Rep. No. 362, 96th Cong., 1st Sess. 9 (1979); see also Hastings v. Judicial Conf. of the United States, 829 F.2d 91, 106 (D.C. Cir. 1987) (quoting Senate Report). Conduct that leads merely to a "loss of collegiality" falls outside the misconduct targeted by Rule 4(c)(1).
 
 
 14
 Accordingly, the complaint is dismissed insofar as it alleges that meetings of eight specified judges constitute misconduct or require investigation for possible misconduct.
 
 II.
 
 15
 The remaining allegation is that a subject judge bypassed the random case-assignment system usually employed by the District Court in order to assign two criminal cases involving friends of President Clinton to Clinton-appointed judges "because she believed, or had reason to believe, that recent Clinton appointees would be more disposed to render decisions favorable to a Democrat/Clinton Administration." Supplement at 2. Although random case assignment is the norm, District Court Local Criminal Rule 57.10(c) (then Local Rule 403(g)), provides that "[i]f the Chief Judge determines at the time an indictment is returned that the case will be protracted and that the expeditious and efficient disposition of the court's business requires assignment of the case on a nonrandom basis, the Chief Judge may specially assign that case to any active judge or to any senior judge who consents."
 
 
 16
 Complainant does not contend that this local rule is unlawful or in any way improper. Rather it questions the way in which the subject judge exercised her discretion in applying the rule. Complainant points to the fact that, in bypassing the random case-assignment system, the subject judge selected two judges who were appointed by President Clinton. But that fact alone does not support an inference of impropriety. In a two-party system where judges are appointed by the President, every available judge will have been appointed by either a President of the same party or by one of the opposing party. Thus any remotely discretionary case assignment system will, in any case involving an ally of a President, past or present, entail a choice among those alternatives; accordingly, the choice itself, one way or the other, can hardly be said to show impropriety or its appearance. That both selected judges were Clinton-appointees is neither damning nor surprising, given that at the time the second case was assigned only four active judges in the District Court (excluding the subject judge) were appointed by a president other than Clinton.
 
 
 17
 The subject judge's decision is, moreover, entirely consistent with the local rule's preference for "the expeditious and efficient disposition of the court's business." The two cases at issue were high-profile and the judges selected to oversee the trials were capable of providing a timely resolution. These judges were, as the subject judge has attested in letters filed in answer to my request for a response, "known to be efficient and they assured [the subject judge] that their dockets would permit the intense preparation required by these high profile cases." Confidential Addendum to Response of Subject Judge, filed November 5, 1999 ("Confidential Addendum"). The docket statistics from the relevant time period bear out this point. See Confidential Supplement to Response of Subject Judge, filed November 8, 1999. In January 1998, when the first of the two cases was assigned, the assigned judge had only six criminal cases on his docket, second fewest of all active judges and far fewer than the judge with the heaviest docket (19 cases). Similarly, in April 1998, when the second case was assigned, the selected judge had nine criminal cases on his docket, third lowest among active judges (with the January selectee being one of the two with fewer cases). By May, the April selectee had reduced his criminal docket to seven cases; for that month, the two selected judges had the lowest criminal caseloads on the court.
 
 
 18
 In determining whether a complaint is "frivolous," the chief judge is authorized to conduct an inquiry to determine "whether the facts stated in the complaint are either plainly untrue or are incapable of being established through investigation." D.C. Cir. Jud. Misconduct R. 4(b). Having conducted this inquiry, I conclude that the relative size of the selected judges' criminal dockets, and the make-up of the District Court (in terms of the presidents who made the appointments) at the time these judges were selected, rebut any reasonable inference of impropriety. Moreover, the alleged impropriety is "incapable of being established through investigation." The subject judge has asserted an acceptable justification in support of her action, and in light of the broad discretion that the local rule affords, only the proverbial "smoking gun" would suggest any improper activity to the contrary. As noted above, we generally assume that judges will honor their oaths of office to "administer justice without respect to persons" and to "faithfully and impartially discharge and perform all ... duties incumbent upon [them] ... under the Constitution and laws of the United States." 28 U.S.C. §§ 453. The Misconduct Rules, moreover, express the policy that "[t]he formal investigatory procedures are to be regarded as a last resort." D.C. Cir. Jud. Misconduct R. 4 cmt. In the circumstances presented here, a purely conclusory allegation, supported only by facts that in context are entirely consistent with honorable and correct behavior, is not enough to justify a search for such evidence. Accordingly, the complaint is dismissed as frivolous pursuant to 28 U.S.C. 372(c)(3).
 
 
 19
 In dismissing the complaint as unsupported, however, I do not intend to imply that the local rule allowing non-random assignment of cases is beyond criticism. The lack of objective standards to govern the rule's use makes possible both actual and perceived abuses, and the subject judge notes that perhaps "our special assignment system needs to be reexamined and more precise standards need to be adopted." Confidential Addendum at 1. Moreover, it would seem that the very legitimate concerns about undue delay can be resolved by special provisions simply precluding assignment of any cases to a judge manifestly behind in his or her docket. But the trade-offs between retention and elimination of the rule, and between all the imaginable variations by which it might be replaced, are for another forum.
 
 
 20
 For the reasons stated above, the complaint is dismissed as frivolous under 28 U.S.C. 372(c)(3)(A)(iii).[1]
 
 
 
 Notes:
 
 
 [1]
 Pursuant to 28 U.S.C. 372(c)(10) (1994) and D.C. Cir. Jud. Misconduct R. 5, complainant may file a petition for review by the Judicial Council for the District of Columbia Circuit. Any petition must be filed in the Office of the Clerk of the Court of Appeals within 30 days of the date of the Clerk's letter transmitting the dismissal Order and this Opinion. See D.C. Cir. Jud. Misconduct R. 6(a).