The Judicial Council

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed November 17, 1999

 

 In the Matter of a Charge of Judicial 
 Misconduct or Disability

 Judicial Council Complaint 
 No. 99-11

 ---------

 BEFORE: Williams, Acting Chief Judge of the Circuit.

 O R D E R

 Upon consideration of the complaint herein, filed against 
nine judges of the United States District Court for the 
District of Columbia pursuant to the Judicial Councils Reform 
and Judicial Conduct and Disability Act of 1980 and the Rules 
of the Judicial Council for the District of Columbia Circuit 
Governing Complaints of Judicial Misconduct or Disability, it 
is

 ORDERED, for the reasons stated in the attached Opinion, 
that the complaint be dismissed as frivolous under 28 U.S.C. 
s 372(c)(3) (1994).

 The Clerk is directed to send copies of this Order and 
accompanying Opinion to complainant and the subject judges. 
See 28 U.S.C. s 372(c)(3) (1994); D.C. Cir. Jud. Misconduct R. 
4(f)(1).

 ____________________

 Stephen F. Williams, Acting Chief Judge

 District of Columbia Circuit

 

 The Judicial Council

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 
 Filed November 17, 1999

 In the Matter of a Charge of Judicial 
 Misconduct or Disability

 
 Judicial Council Complaint
 No. 99-11

 
 BEFORE: Williams, Acting Chief Judge of the Circuit.

 Williams, Acting Chief Judge: This matter involves a 
complaint of judicial misconduct, made pursuant to the Judi-
cial Councils Reform and Judicial Conduct and Disability Act 
of 1980 ("the Judicial Councils Act"). The Act seeks to 
ensure that federal court of appeals, district, bankruptcy, and 
magistrate judges will not "engage[ ] in conduct prejudicial to 
the effective and expeditious administration of the business of 
the courts." 28 U.S.C. s 372(c)(1) (1994). "Any person" who 
has reason to believe that a judge has engaged in such 
conduct may file a written complaint, along with a brief 
statement of the facts constituting such conduct, with the 
Clerk of the Court of Appeals. Id. The matter is then 
referred to the Chief Judge of the Circuit, who, by written 
order, may dismiss the complaint if it is (i) not in conformity 
with section 372(c)(1); (ii) directly related to the merits of a 
decision or procedural ruling; or (iii) frivolous. See id. 
s 372(c)(3)(A); D.C. Cir. Jud. Misconduct R. 4(c). Under 
Rule 4(c)(3) of the Rules of the Judicial Council for the 
District of Columbia Circuit Governing Complaints of Judicial 
Misconduct or Disability ("Misconduct Rules"), "frivolous" 
complaints include ones "making charges that are wholly 
unsupported." D.C. Cir. Jud. Misconduct R. 4(c)(3).

 The instant complaint (in the form of a letter dated August 
30, 1999 and a Supplement dated September 15, 1999 ("Sup-
plement")) involves charges against nine judges of the United 
States District Court for the District of Columbia, and raises 
two distinct allegations of misconduct. First, in light of press 

reports that eight subject judges, all appointed by President 
Clinton, hold monthly meetings, complainant requests an 
investigation of "[w]hether substantive or procedural case 
issues were discussed concerning lawsuits against or concern-
ing the Clinton Administration during [these meetings] and, if 
so, were various courses of action also discussed and/or 
decided upon in an effort to obtain the most favorable results 
for a Democrat/Clinton Administration?" Supplement at 2-3. 
Second, complainant requests an investigation as to whether 
one of the subject judges bypassed the random case-
assignment system usually employed by the District Court in 
order to assign two criminal cases involving friends of Presi-
dent William Jefferson Clinton to Clinton-appointed judges 
"because she believed, or had reason to believe, that recent 
Clinton appointees would be more disposed to render deci-
sions favorable to a Democrat/Clinton Administration." Id. 
at 2.

 I.

 According to press reports attached to the complaint, it is 
an "open secret" that the eight subject judges appointed by 
President Clinton meet together regularly. The complaint in 
effect contains three allegations: (1) that the eight subject 
judges meet regularly in private, without the other members 
of the District Court; (2) that "cases concerning alleged 
misconduct and illegality in the Clinton Administration" may 
have been topics of discussion; and (3) that such discussions 
may have had improper components, namely, efforts to in-
crease the likelihood that the cases were treated or resolved 
in such a way as "to obtain the most favorable results for a 
Democrat/Clinton Administration." The charge that the sub-
ject judges met and discussed their cases is not in itself 
troubling. I am aware of no rule, nor has any been cited by 
complainant, that prohibits District Court judges from confer-
ring with other members of their court about pending cases, 
assuming the other judges are not ones who would have been 
required to recuse themselves as to any of the cases dis-
cussed. Far from constituting misconduct, such discussions 
might well improve the quality of decisionmaking.

 The third allegation is quite a different matter. It would 
clearly be an impropriety for judges to meet for the purpose 
of making their judicial rulings provide advantage to any 
administration or political party. See Code of Conduct For 
United States Judges, Canon 3(A)(1), reprinted in 2 Adminis-
trative Office of the United States Courts Guide to Judicia-
ry Policies and Procedures, ch. I, at I-4 (1999 ed.) ("A judge 
... should not be swayed by partisan interest...."). As to 
this element, however, the complaint fails to assert facts 
supporting a reasonable inference of the alleged impropriety. 
The only fact seemingly offered is that the discussions alleg-
edly occurred during regular meetings to which only Clinton 
appointees were invited. Apparently implicit in complainant's 
readiness to draw the inference that improper behavior has 
occurred is a supposition that the repeated gathering of 
judges appointed by a president of one political party, and 
perhaps themselves belonging to that party, is improbable in 
the absence of an intent to distort the course of law for the 
benefit of that president and that party. But judges appoint-
ed by a single administration are likely to be drawn together 
by all sorts of common interests. Those common interests 
may, of course, include shared political outlooks and interests 
in cases pending in the same court. But the possibility that 
judges of a harmonious political outlook use the alleged 
meetings as an occasion for discussion of cases does not in 
itself carry any inference that they also use them for conver-
sations that would violate the canon against partisan interest. 
Thus their meetings are easily understood without reference 
to any illicit purpose.

 As support for complainant's inference, then, this leaves 
only the idea that an opportunity for impropriety will in fact 
prove the occasion of impropriety. Implicit in this reasoning 
is perhaps a still broader notion--that judges will commonly 
harbor such deep sympathy or gratitude for the president 
that appointed them that they cannot be impartial in any case 
that concerns allegations of illegality or impropriety by the 
executive branch, its officials, or friends of the president. 
Complainant accordingly refers to the fact that Clinton ap-
pointees on the Eighth Circuit recused themselves in the 

Jones v. Clinton appeal, suggests that a local rule be adopted 
requiring "this practice" in the District of Columbia Circuit, 
see Supplement at 4 n.1, and attaches a list of cases pending 
before the subject judges in which complainant is a party and 
in which there are issues regarding the propriety of conduct 
by various government entities. But although opportunity 
for impropriety is essential, it is far from sufficient. Alone it 
is little evidence--certainly not enough to overcome the as-
sumption that judges will honor their oaths of office to 
"administer justice without respect to persons" and to "faith-
fully and impartially discharge and perform all ... duties 
incumbent upon [them] ... under the Constitution and laws 
of the United States." 28 U.S.C. s 453.

 Even recast as an assertion of an "appearance of impro-
priety" the charges fail. An appearance of impropriety exists 
only when a reasonable person, "with knowledge of all the 
relevant circumstances that a reasonable inquiry would dis-
close," would believe that "the judge's ability to carry out 
[his] responsibilities with integrity, impartiality, and compe-
tence [was] impaired." Code of Conduct for United States 
Judges Canon 2A cmt., reprinted in 2 Administrative Office 
of The United States Courts, Guide to Judiciary Policies And 
Procedures, ch. I at I-3. But reasonable observers do not 
take so cynical a view of the judiciary: they "understand that 
federal judges, ... like the vast majority of unelected public 
officials, are able to disregard the political views of their 
friends and carry out their responsibilities in a fair and 
impartial manner." Charge of Judicial Misconduct or Dis-
ability, 85 F.3d 701, 707 (D.C. Cir. Jud. Council 1996) (Tatel, 
J., concurring). Here the facts are too slender to convince 
the reasonable person otherwise--to believe that the subject 
judges have employed their gatherings for the purpose of 
subverting the law to crass political purposes.

 As the facts alleged give no reason to infer misconduct, it is 
inappropriate to impose on the court the burdens of an 
investigation. The complaint of misconduct is "wholly unsup-
ported" and is dismissed as frivolous pursuant to 28 U.S.C. 
s 372(c)(3). See Charge of Judicial Misconduct or Disabili-
ty, 170 F.3d 1152, 1155 (D.C. Cir. Jud. Council 1999) (dismiss-

ing as frivolous a claim of bias that was "entirely unsupport-
ed"); Complaint of Doe, 2 F.3d 308, 311 (8th Cir. Jud. 
Council 1993) (dismissing as frivolous unsupported allegations 
of conspiracy and bias); Charge of Judicial Misconduct, 691 
F.2d 924, 925 (9th Cir. Jud. Council 1982) (charge of conspira-
cy unsupported by specific factual allegations was properly 
dismissed by the chief judge as frivolous).

 I of course express no opinion as to whether the holding of 
the meetings may, as alleged in certain press clippings at-
tached to the complaint, cause a "loss of collegiality" in the 
District Court. Assuming the conduct has such an effect, it 
would not thereby constitute "conduct prejudicial to the effec-
tive and expeditious administration of the business of the 
courts." D.C. Cir. Jud. Misconduct R. 4(c)(1) ("A complaint 
will be dismissed if the chief judge concludes [ ] that the 
claimed conduct, even if the claim is true, is not 'conduct 
prejudicial to the effective and expeditious administration of 
the business of the courts.' "). Such prejudicial conduct 
includes the "use of the judge's office to obtain special 
treatment for friends and relatives, acceptance of bribes, 
improperly engaging in discussions with lawyers or parties to 
cases in the absence of representatives of opposing parties, 
and other abuses of judicial office," D.C. Cir. Jud. Misconduct 
R. 1(b), and, as suggested by the Senate Report, "is intended 
to include willful misconduct in office, willful and persistent 
failure to perform duties of the office, habitual intemperance, 
and other conduct prejudicial to the administration of justice 
that brings the judicial office into disrepute." S. Rep. No. 
362, 96th Cong., 1st Sess. 9 (1979); see also Hastings v. 
Judicial Conf. of the United States, 829 F.2d 91, 106 (D.C. 
Cir. 1987) (quoting Senate Report). Conduct that leads 
merely to a "loss of collegiality" falls outside the misconduct 
targeted by Rule 4(c)(1).

 Accordingly, the complaint is dismissed insofar as it alleges 
that meetings of eight specified judges constitute misconduct 
or require investigation for possible misconduct.

 II.

 The remaining allegation is that a subject judge bypassed 
the random case-assignment system usually employed by the 
District Court in order to assign two criminal cases involving 
friends of President Clinton to Clinton-appointed judges "be-
cause she believed, or had reason to believe, that recent 
Clinton appointees would be more disposed to render deci-
sions favorable to a Democrat/Clinton Administration." Sup-
plement at 2. Although random case assignment is the norm, 
District Court Local Criminal Rule 57.10(c) (then Local Rule 
403(g)), provides that "[i]f the Chief Judge determines at the 
time an indictment is returned that the case will be protract-
ed and that the expeditious and efficient disposition of the 
court's business requires assignment of the case on a non-
random basis, the Chief Judge may specially assign that case 
to any active judge or to any senior judge who consents."

 Complainant does not contend that this local rule is unlaw-
ful or in any way improper. Rather it questions the way in 
which the subject judge exercised her discretion in applying 
the rule. Complainant points to the fact that, in bypassing 
the random case-assignment system, the subject judge select-
ed two judges who were appointed by President Clinton. But 
that fact alone does not support an inference of impropriety. 
In a two-party system where judges are appointed by the 
President, every available judge will have been appointed by 
either a President of the same party or by one of the 
opposing party. Thus any remotely discretionary case as-
signment system will, in any case involving an ally of a 
President, past or present, entail a choice among those alter-
natives; accordingly, the choice itself, one way or the other, 
can hardly be said to show impropriety or its appearance. 
That both selected judges were Clinton-appointees is neither 
damning nor surprising, given that at the time the second 
case was assigned only four active judges in the District 
Court (excluding the subject judge) were appointed by a 
president other than Clinton.

 The subject judge's decision is, moreover, entirely consis-
tent with the local rule's preference for "the expeditious and 
efficient disposition of the court's business." The two cases 
at issue were high-profile and the judges selected to oversee 

the trials were capable of providing a timely resolution. 
These judges were, as the subject judge has attested in 
letters filed in answer to my request for a response, "known 
to be efficient and they assured [the subject judge] that their 
dockets would permit the intense preparation required by 
these high profile cases." Confidential Addendum to Re-
sponse of Subject Judge, filed November 5, 1999 ("Confiden-
tial Addendum"). The docket statistics from the relevant 
time period bear out this point. See Confidential Supplement 
to Response of Subject Judge, filed November 8, 1999. In 
January 1998, when the first of the two cases was assigned, 
the assigned judge had only six criminal cases on his docket, 
second fewest of all active judges and far fewer than the 
judge with the heaviest docket (19 cases). Similarly, in April 
1998, when the second case was assigned, the selected judge 
had nine criminal cases on his docket, third lowest among 
active judges (with the January selectee being one of the two 
with fewer cases). By May, the April selectee had reduced 
his criminal docket to seven cases; for that month, the two 
selected judges had the lowest criminal caseloads on the 
court.

 In determining whether a complaint is "frivolous," the chief 
judge is authorized to conduct an inquiry to determine 
"whether the facts stated in the complaint are either plainly 
untrue or are incapable of being established through investi-
gation." D.C. Cir. Jud. Misconduct R. 4(b). Having con-
ducted this inquiry, I conclude that the relative size of the 
selected judges' criminal dockets, and the make-up of the 
District Court (in terms of the presidents who made the 
appointments) at the time these judges were selected, rebut 
any reasonable inference of impropriety. Moreover, the al-
leged impropriety is "incapable of being established through 
investigation." The subject judge has asserted an acceptable 
justification in support of her action, and in light of the broad 
discretion that the local rule affords, only the proverbial 
"smoking gun" would suggest any improper activity to the 
contrary. As noted above, we generally assume that judges 
will honor their oaths of office to "administer justice without 
respect to persons" and to "faithfully and impartially dis-

charge and perform all ... duties incumbent upon [them] ... 
under the Constitution and laws of the United States." 28 
U.S.C. s 453. The Misconduct Rules, moreover, express the 
policy that "[t]he formal investigatory procedures are to be 
regarded as a last resort." D.C. Cir. Jud. Misconduct R. 4 
cmt. In the circumstances presented here, a purely concluso-
ry allegation, supported only by facts that in context are 
entirely consistent with honorable and correct behavior, is not 
enough to justify a search for such evidence. Accordingly, 
the complaint is dismissed as frivolous pursuant to 28 U.S.C. 
s 372(c)(3).

 In dismissing the complaint as unsupported, however, I do 
not intend to imply that the local rule allowing non-random 
assignment of cases is beyond criticism. The lack of objective 
standards to govern the rule's use makes possible both actual 
and perceived abuses, and the subject judge notes that per-
haps "our special assignment system needs to be reexamined 
and more precise standards need to be adopted." Confiden-
tial Addendum at 1. Moreover, it would seem that the very 
legitimate concerns about undue delay can be resolved by 
special provisions simply precluding assignment of any cases 
to a judge manifestly behind in his or her docket. But the 
trade-offs between retention and elimination of the rule, and 
between all the imaginable variations by which it might be 
replaced, are for another forum.

 For the reasons stated above, the complaint is dismissed as 
frivolous under 28 U.S.C. s 372(c)(3)(A)(iii).1

 1 Pursuant to 28 U.S.C. s 372(c)(10) (1994) and D.C. Cir. Jud. 
Misconduct R. 5, complainant may file a petition for review by the 
Judicial Council for the District of Columbia Circuit. Any petition 
must be filed in the Office of the Clerk of the Court of Appeals 
within 30 days of the date of the Clerk's letter transmitting the 
dismissal Order and this Opinion. See D.C. Cir. Jud. Misconduct R. 
6(a).